Whaley, Judge,
delivered the opinion of the court:
This is a claim of an officer of the Navy for reimbursement for medicines and medical attendance while on duty where medicines and medical attendance could not be supplied by the United States Navy.
The facts are not in dispute. The claim is made under ■section 1586 of the Revised Statutes which reads:
“ Expenses incurred by an officer of the Navy for medicines and medical attendance shall not be allowed unless they were incurred when he was on duty, and the medicines could not have been obtained from naval supplies, or' the attendance ■of a naval medical officer could not have been had.”
A brief statement of the facts only is necessary for an understanding of the case. The plaintiff, a lieutenant, junior grade, U.S. Navy, on July 2, 1930, while stationed at the naval air station at Pensacola, Florida, received from the Bureau of Navigation orders detaching him from the Pensa■cola Air Station and instructing him to report for duty with the U.S.S. Nevada (then on the West coast); such orders authorized a delay until August 5, 1930, but delay was to ■count as leave and the plaintiff was required to advise the Navy Department upon the commencement of such leave. The plaintiff did not request any leave but, on the contrary, notified the Navy Department that he was departing from the Pensacola Naval Air Station. He departed at three •o’clock on July 2, 1930, for the west coast, accompanied by his wife, travelling in his own automobile. At about ten ■o’clock that night he was injured in an automobile accident .about nine miles from Clanton, Alabama. A naval hospital not being available, he was taken to the Central Alabama Hospital for attention and treatment. The nearest naval hospital was at Pensacola, some two hundred and fifty miles distant. Plaintiff notified the Navy Department by telegraph promptly of the accident and asked for instructions. *629 Navy Department ordered a naval doctor from Birmingham to call upon him. A naval doctor from Pensacola made one call and a naval doctor from Montgomery made regular calls. These three naval doctors did not take part in his treatment, but advised that he be left in the care of his civilian doctor until he could be removed to a naval hospital, and they reported his progress to recovery to the Bureau of Navigation. The plaintiff remained in the hospital from July 2, 1930, to August 9, 1930, and paid for hospitalization, medicine, and medical attention, the sum of $281.00.
The two questions to be considered in this case are:
(1) Was the officer on duty at the time he was disabled, or was he on leave?
And if he were not on leave,
(2) Was he on a reasonably direct route from the station from which he had been detached to the, station (U.S.S. Nevada) to which he had been assigned, or had he departed so far from the regular line of travel that he cannot be considered en route to his assigned station ?
The means of conveyance is not in dispute. No regular route had been assigned him and no special means of conveyance designated.
We have found as a fact that the plaintiff was on duty the day of his departure. Permission to take leave was in the order of detachment and new assignment, but in order to avail himself of this permitted leave, notice had to be given the Department. No notice of intention to take leave was given the Department. Notice was given of his departure. The plaintiff departed from Pensacola on the afternoon of the day he received orders transferring him to duty aboard the U.S.S. Nevada.
Under Naval Begulations 1727, subparagraph 3:
“ * * * A leave of absence begins on the day following that on which an officer departs from his station or duty. The day of departure, whatever the hour, is counted as a day of duty. * * * ”
It is clearly apparent from this regulation that the plaintiff’s leave of absence, if he had taken advantage of the permission to delay his departure, would not have commenced until the following day. Being on duty, he had the *630 right to commence his journey to his new assignment in obedience to the orders received, and only his voluntary departure from a reasonably direct route for personal reasons ■could remove him from the protection of the care of the Naval Establishment. The plaintiff at the time of the accident was on the highway from Montgomery to Birmingham which is on the shortest and most direct route from Pensacola to the Pacific coast, and whether he intended to deviate from this direct route later, to pick up his son, does not enter into the case, nor does it have any bearing on the ■actual fact that when he was injured he was on the direct route from his detached station to the station on the Pacific coast to which he had been assigned. Up to the time of the accident, plaintiff had not deviated and while on duty was proceeding on the most direct route to his new assignment. The facts show, and there is no dispute of- them, that medicines could not be obtained, or the attendance of a naval medical officer had, when the plaintiff was placed in the hospital. Notice was promptly given the naval authorities .and it was upon the advice of the naval doctors, and with the full sanction and authority of the Navy Department, that the plaintiff remained in the hospital under civilian physicians until his removal to the naval hospital at Washington, D.C., on August 9, 1930.
Williams, Judge; Littleton, Judge; and GREen, Judge, concur.
Booth, Chief Justice, did not hear this case, on account of illness, and took no part in its decision.
The plaintiff is entitled to recover the sum of $281.00. It is so ordered.