**NIMRO v. DAVIS et al.**

No. 11214.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 9, 1953.

Decided May 28, 1953.

Mr. Charles F. O'Neall, Washington, D. C. (appointed by this Court) for appellant.

Mr. Lewis A. Carroll, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Charles M. Irelan, U. S. Atty., Washington, D. C., at the time of argument, and William R. Glendon, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellees. Messrs. Joseph M. Howard and Joseph F. Goetten, Asst. U. S. Attys., Washington, D. C., at the time record was filed, entered appearances for appellees. Mr. William E. Kirk, Jr., Asst. U. S. Atty., Washington, D. C., at the time of argument, also entered an appearance for appellees.

Before CLARK, PROCTOR and FAHY, Circuit Judges.

PROCTOR, Circuit Judge.

Bernard P. Nimro, appellant, complained in the District Court against "Admiral Glen B. Davis, U. S. N.," and other named officers and civilians "as administrators, directors, custodians of the lunch room fund, members of the board of governors of the Naval Gun Factory Lunchroom Committee," for alleged services rendered and expenses incurred, claiming in all the sum of $33,367.70. By joint answer defendants attacked the complaint for failure to state a claim upon which relief could be granted, denied the court's jurisdiction over the subject matter, and also denied the plaintiff's allegations as to services and expenses. They also moved for summary judgment, supporting the motion by annexing verified copies of data bearing upon the status of the Board. Upon consideration of the pleadings and record the court granted the motion and dismissed the complaint upon the ground that the suit was one against the United States without its consent. That is the question now before us.

The Board is composed of naval officers and civilian employees of the Naval Gun Factory, appointed by its Superintendent, a naval officer assigned by the Secretary of the Navy. In making the appointments the Superintendent acted pursuant to "Navy Civilian Personnel Instructions," referred

to as NCPI 66, issued October 10, 1949, by the Undersecretary of the Navy. These instructions (T.R.11) [1] form a comprehensive set of directives to govern the establishment and operation of employee services in naval establishments, the purpose being "to make available for them where necessary those facilities which reduce to a minimum interruptions of work for personal affairs, and to provide bases for the development and continuance of interest in their jobs and places of work." Only services which contribute "to morale, job interest, cooperation, better attendance, health, and productive output," are justified under the program. Employee services are declared to be an *"integral part of the Industrial Relations Program,* and as such should consist only of facilities which contribute to the efficiency of the service." (Emphasis ours.)

Section 4 of the instructions relates directly to food services. (T.R.14.) It is asserted to be the policy of the Navy Department to make such facilities available, where necessary and practicable, for the benefit of all employees of an activity, through the medium of employee representatives, who determine operating policies and procedures, subject to approval of the head of the activity (the Superintendent of the Factory). Normally "employee organization" and participation may be initiated through appointment by the head of the activity of a five to seven member Cafeteria Association, "responsible for developing, recommending, and executing plans for operation of the food service, subject to approval of the head of the activity." The operation may be carried on through agreement with a concessionaire (as in the present case), in which event a contract shall be made between the Association and the concessionaire, and bear the signature of the head of the activity (the Superintendent) only as to approval of the terms of the contract and use of the facilities of the activity.[2] Income of the Board from the food service is to be used primarily for improving the same, secondarily for such welfare and recreation as will benefit the employees of the activity. (T.R.15.) Members of the Board receive no part of the fund for their services. Their only compensation is as regular employees of the Government. (Appellees' Brief 7.)

In discharging its responsibilities [3] the Board, with approval of the Superintendent, entered into a contract with "M & M Restaurants, Inc." as "the concessionaire." The instrument, dated December 1, 1949, granted to the concessionaire the right "to operate, as an independent contractor," the cafeterias and food services in the Naval Gun Factory for one year, with provisions for automatic extensions. (T.R.21.)

Further, there was an important provision that the Board should furnish equipment for operation of the cafeterias, and replacements, additions and repairs made necessary by ordinary wear and tear, etc. In order to assure the Board means to discharge those particular obligations and otherwise improve the services and facilities for welfare of employees of the Factory, the contract provided that two percentum of the total receipts should "be turned over to the Board for the privilege of the concession * * * [to] be paid monthly to the Board as a receipt for the Lunchroom Equipment Fund," the amount so paid to be "retained by the Board unless and until expended, from time to time, in the Board's discretion, for the purposes stated." (T.R.24.) Subject to such payments all profits belonged to the concessionaire.

Nimro takes the single position that the Board members are sued only in their representative capacity as custodians of a private fund, not as officers or employees of the Government; therefore that they are not immune from suit. The Board contends that it is an instrumentality of the Navy Department, and as such is immune to the same extent as the Department itself. The Board relies upon the decision of the Supreme Court in Standard Oil Co. of Cal.

---

1. We shall refer to the Transcript of Record as "T.R."

2. "Activity" has reference in the present case to the Naval Gun Factory.

3. To develop, recommend and execute plans for operation of the food service.

v. Johnson, 1942, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611, holding that Army post exchanges are arms of the Federal Government—integral parts of the War Department partaking of its immunities from suit.

The Supreme Court in the Standard Oil case gives the factual background covering the establishment and operation of post exchanges. It declares the decisive factor to be the relationship between post exchanges and the Government. So here we look to the relationship between the Board, the governing body of the food service at the Naval Gun Factory, and the Government. Although details differ as between the Army and Navy services, yet in essence we think the supervisory or governing bodies of both are of similar character and relationship to the Government.

Post exchanges are established and operated under regulations of the Secretary of War.[4] Cafeterias, or luncheon services, at naval installations are established and operated under "Navy Civilian Personnel Instructions," (NCPI 66) issued by the Secretary of the Navy. These instructions have the same force and effect as Army regulations. Certainly they are binding upon officers and employees of the Navy Department. They serve the same purpose in establishing and operating employee services in the Navy that War Department regulations serve in connection with post exchanges. In each the underlying purpose is the same, i.e., promotion of the Government's interests in the conduct of its military and naval activities.

The commanding officer of an Army post has the authority to establish and maintain an exchange and to detail an officer to manage its affairs, who, with commanding officers of the various company units, constitute a "council" to supervise exchange activities. This council may be likened to the "Cafeteria Association" (the Board) appointed by the Superintendent of the Gun Factory from among its military and civilian personnel under authority of NCPI 66. Under these instructions the Cafeteria Association is responsible for "developing, recommending, and executing" plans for operation of food services for employees of the naval activity.

█ In the light of facts we have outlined, and guided by the opinion of the Supreme Court in the Standard Oil case, we see a distinct relationship between the Board and the Navy Department. We think that relationship is such as to constitute the Board an arm of the Government, performing a governmental function as an integral part of the Navy Department, made up of the Department's own personnel, acting officially under authority and direction of the Secretary in accordance with his instructions (NCPI 66), to carry out a purpose declared by him to be an "integral part of the Industrial Relations Program" of the Navy Department.

█ We conclude that the individuals comprising the Board were acting for and in behalf of the United States, and not in any private capacity. Therefore, the action is in legal effect against the United States without its consent, for the statute [5] limits a civil action or claim against the Government in the District Court to $10,000.

Affirmed.

4. The Supreme Court says that "These regulations and the practices under them establish the relationship between the post exchange and the United States Government, and together with the relevant statutory and constitutional provisions from which they derive, afford the data upon which the legal status of the post exchange may be determined." 316 U.S. at page 483, 62 S.Ct. at page 1169, 86 L.Ed. at page 1615.

5. 28 U.S.C. § 1346 (Supp. V, 1952).