Leland K. AUBREY and Charlotte R. Aubrey, Appellants,

v.

UNITED STATES of America, Appellee.

No. 14157.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 20, 1958.

Decided April 10, 1958.

Mr. Bernard J. Hammett, Washington, D. C., with whom Messrs. W. Byron Sorrell and Cullen B. Jones, Jr., Washington, D. C., were on the brief, for appellants.

Mr. Stanley D. Rose, of the bar of the Supreme Court of Tennessee, *pro hac vice*, by special leave of Court, with whom Asst. Atty. Gen. George C. Doub, Messrs. Oliver Gasch, U. S. Atty., and Morton Hollander, Atty., Dept. of Justice, were on the brief, for appellee. Mr. Lewis Carroll, Asst. U. S. Atty., also entered an appearance for appellee.

＊ Sitting by designation pursuant to Section 294(a), Title 28 U.S.C., 28 U.S.C.A. § 294(a).

Before REED, Associate Justice of the Supreme Court, retired,＊ and PRETTYMAN and BAZELON, Circuit Judges.

REED, Associate Justice (sitting by designation).

Leland Aubrey and his wife, Charlotte Aubrey, appeal from the order of the District Court granting summary judgment against them in their suit against the United States under the Tort Claims Act. The principal questions on appeal are (1) whether the workmen's compensation statute applicable to a civilian employee of a Navy officers' open mess bars him from suing the United States for injuries suffered in the course of his employment as the result of the negligence of the United States; and (2) whether the injured employee's wife may maintain a suit against the United States for loss of consortium resulting from the alleged injury.

On October 22, 1954, Leland Aubrey was assistant manager of the Officers' Mess at the Naval Gun Factory in Washington, D. C. The Officers' Mess is a nonappropriated fund activity and Aubrey's salary as an employee of the Mess was paid from the proceeds of the sale of food and beverages. The Mess had agreed to provide catering service for a Navy Relief Ball which was to be held on the evening of October 22, 1954, in a large hall at the Gun Factory. This hall, known as the "Sail Loft," was owned, maintained and controlled by the Naval Gun Factory and was not a part of the facilities of the Officers' Mess. On the day of the dance the hall was being waxed by Navy enlisted men acting within the scope of their employment, when Aubrey, in the course of his duties in preparing the catering arrangements, entered the "Sail Loft," slipped on the newly-waxed floor, fell and broke his ankle.

The Mess, as required by statute,[1] had provided workmen's compensation insur-

1. 66 Stat. 138 (1952), 5 U.S.C. § 150k–1 (1952), 5 U.S.C.A. § 150k–1; see note 3. The Mess was also an employer and

ance. Aubrey received from the insurer the sum of $279.00 as payment for medical expenses and further payments totaling $710.00 for disability. Later Aubrey filed this action under the Federal Tort Claims Act,[2] seeking to recover damages from the United States for his injuries and alleging that the injuries were proximately caused by the negligence of the United States and its employees in cleaning and waxing the floor upon which he slipped and fell. His wife, appellant Charlotte Aubrey, joined as plaintiff and sought to recover damages from the United States for loss of consortium.

■ The record discloses that at the pretrial proceeding in this action, it was stipulated by counsel for plaintiffs and counsel for the United States that "Plaintiff Leland Aubrey was not a Government employee on October 22, 1954." On appeal, Aubrey argues that even if the compensation is the exclusive remedy against his employer, this does not bar his right to sue the defendant since, according to the stipulation, the Government was not his employer. We hold that the compensation provided by the Officers' Mess, an instrumentality of the United States, was Aubrey's exclusive remedy against the United States. By enacting a statutory system of remedies for injuries in the course of employment by these government instrumentalities, Congress has limited the remedy available against the United States by civilian employees of such instrumentalities to workmen's compensation, the cost of which is borne by the self-supporting instrumentalities themselves.

By the Act of June 19, 1952,[3] Congress sought to allay certain doubts concerning the status of civilian employees of nonappropriated fund activities under the jurisdiction of the Armed Forces. These doubts had been raised by the holding of the Supreme Court in Standard Oil Co. v. Johnson, 1942, 316 U.S. 481, 62 S.Ct. 1168, 1170, 86 L.Ed. 1611, that Army post exchanges are "arms of the Government" and "integral parts of the War Department" and that they therefore participate in the government's immunity from state taxation. The Civil Service Commission thought that the effect of this decision was to require that the employees of such instrumentalities be considered federal employees and subject to the general federal personnel laws. The Department of Defense did not view the Johnson case as requiring the inclusion of these employees in the same class as employees of activities operated on appropriated moneys, and sought legislation which would clarify their status. Another purpose of the

Aubrey an employee within the terms of the District of Columbia Workmen's Compensation Act. 45 Stat. 600 (1928), § 36–501, D.C.Code (1951), which makes the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424 (1927), 33 U.S.C. §§ 901–950 (1952), 33 U.S.C.A. §§ 901–950, applicable to the District of Columbia.

2. 60 Stat. 812, 842 (1946), now 28 U.S. C.A. § 2671 et seq.

3. 66 Stat. 138, (1952), 5 U.S.C. §§ 150k, 150k–1, 5 U.S.C.A. §§ 150k, 150k–1; provided in part:

Section 150k: "Civilian employees, compensated from nonappropriated funds, of * * * instrumentalities of the United States under the jurisdiction of the Armed Forces conducted for the comfort, pleasure * * * (etc.) of personnel of the Armed Forces, shall not be held and considered as employees of the United States for the purpose of any laws administered by the Civil Service Commission or the provisions of the Federal Employees' Compensation Act, as amended: *Provided*, That the status of these nonappropriated fund activities as Federal instrumentalities shall not be affected."

Section 150k–1: "The nonappropriated fund instrumentalities described in section 150k * * * shall provide their civilian employees, by insurance or otherwise, with compensation for death or disability incurred in the course of employment. * * * (C)ompensation shall be not less than that provided by the laws of the State (or the District of Columbia) in which the employing activity of any such instrumentality is located. * * *"

requested legislation was to require by law what was then the practice of non-appropriated fund activities of providing workmen's compensation protection for their employees. S.Rep. No. 1341, 82d Cong., 2d Sess. (1952); H.R.Rep. No. 1995, 82d Cong., 2d Sess. (1952); 2 U.S. Code Congressional & Administrative News 1952 p. 1520.

The bill proposed by the Department of Defense was subsequently enacted into law. While specifically preserving the status of the nonappropriated fund activities as federal instrumentalities, the Act provided that employees of such activities shall not be considered employees of the United States for the purpose of laws administered by the Civil Service Commission or the provisions of the Federal Employees Compensation Act (5 U. S.C. § 751, 5 U.S.C.A. § 751), and required nonappropriated fund instrumentalities to provide their employees with compensation for death or disability incurred in the course of employment.

An officers' mess, like a post exchange, is an integral part of the military establishment. Pursuant to Congressional authorization, 10 U.S.C. § 6011, 10 U.S.C.A. § 6011, the Secretary of the Navy has issued regulations governing the organization and operation of naval officers' messes. U. S. Navy Regulations 1948, Arts. 0441.6, 1841, provide that the administration and operation of officers' messes shall be under the control and regulation of the Chief of Naval Personnel. The latter has promulgated directives requiring that the messes be organized as integral parts of the Navy and that they be operated under the administration and regulations of the commander or commanding officer of the activity where the mess is located subject to regulations issued by the Chief of Naval Personnel. Bur. of Naval Personnel Man. Arts. C–9501, C–9505. The Bureau of Naval Personnel has also issued detailed instructions concerning every facet of the management of naval officers' messes. Manual for Commissioned Officers' Messes Ashore, Navpers 15847, 1955. Similarly detailed instructions govern the accounting methods to be used by the messes. Accounting Systems for Open and Closed Messes Ashore, Navexos P–1032. Cf. Standard Oil Co. v. Johnson, supra, 483–4; Edelstein v. South Post Officers Club, D.C.E.D.Va. 1951, 118 F.Supp. 40; Bleuer v. United States, D.C.E.D.S.C.1950, 117 F.Supp. 509.

The close relationship between such nonappropriated fund instrumentalities as officers' messes and the military establishment of which they form an arm justifies legislative control of the former by Congress. By § 150k–1, Congress has directly regulated the conduct of these activities to the extent of requiring them to provide workmen's compensation protection for their civilian employees. The requirement that the instrumentalities themselves provide the protection, by insurance or otherwise, was obviously intended to insure that the cost of such protection would be paid out of the proceeds of these self-supporting activities and not out of public funds.

In Feres v. United States, 1950, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152, the Supreme Court considered the question whether a plaintiff injured while on duty with the armed forces through alleged negligence of the United States could sue under the Tort Claims Act. The court noted that Congress had provided systems of simple, certain, and uniform compensation for injuries or death of those in the armed services, and construed the Tort Claims Act to fit into the entire statutory scheme of remedies against the Government to make a workable, consistent and equitable whole. It held that in view of the compensation system provided, it was not the intent of Congress to allow a serviceman to sue the United States for injuries incident to his duties in the armed forces, although the Tort Claims Act did not expressly withhold his right to sue the United States.

The Supreme Court in Johansen v. United States, 1952, 343 U.S. 427, 72 S. Ct. 849, 96 L.Ed. 1051, applied the same

principle in affirming the dismissal of a suit against the United States by a civilian seaman for damages for injuries incurred in his employment aboard a public vessel and caused by the alleged negligence of the United States. The court held that since the seaman was protected by the Federal Employees Compensation Act, 5 U.S.C.A. § 751 et seq., he could not bring suit against the United States under the Public Vessels Act, 46 U.S.C.A. § 781 et seq. even though again the Compensation Act did not in terms state that it was the exclusive remedy available against the United States for such injuries.

We conclude that Aubrey is precluded from maintaining this suit under the Tort Claims Act by the principle set forth in Feres and Johansen that the Act was not intended to grant the right to sue the Government to one who has been provided another remedy against its own instrumentality by the Government through a system "of simple, certain, and uniform compensation for injuries or death." [4] The compensation system provided for plaintiff Aubrey must, like the Tort Claims Act, "be construed to fit, so far as will comport with its words, into the entire statutory system of remedies against the Government to make a workable, consistent and equitable whole." [5] See also Lewis v. United States, 1951, 89 U.S.App.D.C. 21, 190 F. 2d 22; Sigmon v. United States, D.C.W. D.Va.1953, 110 F.Supp. 906. We do not think the fact that the insurer is not the United States but a private insurance carrier requires a distinction between this case and Feres or Johansen.

We turn to the right of action of the wife for damages "for loss of the services, support, companionship and consortium" of her husband, allegedly suffered because of defendant's negligence. This court has held in Hitaffer v. Argonne Co., Inc., 1950, 87 U.S.App.D.C.

57, 183 F.2d 811, 23 A.L.R.2d 1366, that the law allows a recovery for such injury. By Smither & Co., Inc. v. Coles, 1957, 100 U.S.App.D.C. 68, 242 F.2d 220, this court reversed the holding in Hitaffer so far as the wife's right of recovery remained as an individual right, unaffected by the District of Columbia Compensation Act,[6] and held that Mrs. Coles could not recover because liability of the employer provided by the Compensation Act was "exclusive and in place of all other liability of such employer to the * * * wife * * *." 33 U.S.C. § 905, 33 U. S.C.A. § 905.

■ In this case the Officers' Mess, the employer, has met its liability to Aubrey and that arrangement bars the wife's recovery against the mess under the Smither case. But the present action was predicated on the liability to the Aubreys of the United States as the third party tortfeasor, a liability not covered by the Compensation Act. The Aubreys have brought their cause of action under the provisions of § 33 of the Longhoreman's Act—the controlling compensation statute in the District of Columbia. Section 33 of the Act, 33 U.S. C. § 933, 33 U.S.C.A. § 933, is the section covering compensation for third party injuries. Since it has been stipulated that the United States is not the employer of Mr. Aubrey, his wife would be entitled to recover for her alleged injury under the Hitaffer case, supra, if negligence for which the United States is responsible is proven.

■ We think that the allegations of the petition that "through the negligence of the United States and several of its employees * * * in cleaning or waxing the floor of the 'Sail Loft' a dangerous condition was created" and appellee's denial thereof warrants for Mrs. Aubrey a trial for the determination of possible liability.

---

4. 340 U.S. 144, 71 S.Ct. 158; 343 U.S. 440, 72 S.Ct. 857.

5. 340 U.S. 139, 71 S.Ct. 156; 343 U.S. 440, 72 S.Ct. 857.

6. See note 1.

We think that the contentions of appellant and appellee as to the continued vitality of the Hitaffer case should await the judgment of the trial court as to the liability of the United States under that case.[7]

---

7. Compare with Hitaffer v. Argonne Co., supra, the annotations thereon, 23 A.L.R. 2d 1378, summary § 2; negligence of defendants §§ 6–12 inclusive; American Law Institute, Restatement, Torts § 695, 1954 Supplement § 695; Louis L. Jaffe, Damages for Personal Injury, 18 Law and Contemporary Problems 219, 228–230; Best v. Samuel Fox & Co., Ltd., (1952) A.C. 716, and note on the case in The Modern Law Review, London, vol. 16, p. 92; XXXII Canadian Bar Review,

December 1954, p. 1065; 1 U.C.L.A.Law Rev. 223; 55 Mich.L.Rev. 721. See Acuff v. Schmit, Iowa 1956, 78 N.W.2d 480; XIV Washington & Lee L.Rev. 324.