**UNITED STATES of America,**
**Appellant,**

v.

**Fernando S. FORFARI, Appellee.**

**No. 16032.**

United States Court of Appeals
Ninth Circuit.

June 8, 1959.

George Cochran Doub, Asst. Atty. Gen., Morton Hollander, Bernard Cedarbaum, Attys., Dept. of Justice, Washington, D. C., Robert H. Schnacke, U. S. Atty., San Francisco, Cal., for appellant.

Thomas M. Mulvihill, Ernest E. Emmons, Jr., San Francisco, Cal., for appellee.

Before HAMLEY, HAMLIN and JERTBERG, Circuit Judges.

HAMLIN, Circuit Judge.

The United States here appeals from a judgment of the District Court awarding Fernando S. Forfari damages in the amount of $12,673.26. Forfari's action was based on provisions of the Federal Tort Claims Act (28 U.S.C. 1346(b)).[1] Jurisdiction in this court rests on 28 U. S.C. § 1291.

The accident giving rise to the suit occurred on November 21, 1951, in the Commissioned Officers' Mess at Mare Island Naval Shipyard, Vallejo, California. Forfari, a chef, sustained personal injuries when he slipped and fell down a flight of stairs which led from the kitchen to the employees' washroom in the Officers' Mess. The District Court found that the injuries were proximately caused by the negligence of the United States in certain particulars not here relevant.

The Government attacks this judgment by contending: (1) that Forfari was an employee of the United States and is therefore barred from bringing an action under the Federal Tort Claims Act, and/or (2) that Forfari, as an employee of a non-appropriated fund instrumentality of the United States, is precluded from bringing this action because of his recovery under the California Workmen's Compensation Act, West's Ann.Labor Code, § 3201 et seq.

We agree with the contentions of the appellant.

Forfari, a civilian, was employed by the Mare Island Cafeteria System. The Cafeteria System was organized and operated under Navy Civilian Personnel Instruction 66,[2] for the purpose of sup-

---

1. "§ 1346.   United States as defendant

\*      \*      \*      \*      \*

(b) \* \* \* the district courts \* \* shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

2. Navy Civilian Personnel Instruction 66 provides in pertinent part:
"Section 2

\*      \*      \*      \*      \*

"2–1.   Purposes of Employee Services.—The purposes of an employee services program are to keep employees informed of the policies and rules established by management, to make available for them where necessary those facilities which reduce to a minimum interruptions of work for personal affairs, and to provide bases for the development and continuance of interest in their jobs and places of work.

"2–2.   Department Policy.—It is the policy of the Department that a program of employee services based on the needs of the service be established in each naval activity. Only those services which contribute to morale, job interest, cooperation, better attendance, health, and productive output are considered justified under this program.

"2–3.   Organization and Administration.—a.   *Principles of operation.*—Employee services are an integral part of the Industrial Relations Program, and as such should consist only of facilities which contribute to the efficiency of the service. In no case should services be instituted which are adequately provided by community resources and care must be exercised to avoid providing facilities which offer competition to private business in the community. The Department, nevertheless, is concerned with steady day-to-day attendance and production of

plying food to Naval Yard personnel. As a contract concessionaire, the Cafeteria System also provided food services to the Commissioned Officers' Mess at the Naval Shipyard. The Cafeteria System is operated as a non-profit corporation, managed by a civilian, and governed by a civilian board of directors. The Board of Directors reports to the Industrial Relations Officer, a naval officer, and its members are appointed by the naval officer commanding the shipyard.

██ Activities such as the Mare Island Cafeteria System are characterized as non-appropriated fund instrumentalities of the United States. It is settled law that such activities are integral parts of the Government's military services. Standard Oil Co. of

California v. Johnson, 1942, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611, held that Army post exchanges were arms of the federal government and as integral parts of the War Department partook of its immunity under the federal Constitution and statutes. Nimro v. Davis, 1953, 92 U.S.App.D.C. 293, 204 F.2d 734, certiorari denied 346 U.S. 901, 74 S.Ct. 229, 98 L.Ed. 401, held that Naval food services established under NCPI 66[3] serve the same purpose as Army post exchanges, perform a governmental function, and are arms of the United States.

Appellee concedes that the Cafeteria System is a federal instrumentality, but denies that this makes him a federal employee. Appellee, for this proposition, relies on Faleni v. United States, D.C.N. Y.1949, 125 F.Supp. 630.[4]

its employees, and where the absence of adequate community and business resources causes troublesome work interruptions, consideration should be given to the development of necessary employee services.

\*   \*   \*   \*   \*

"Section 4

\*   \*   \*   \*   \*

"4–1. General Statement.—It is the policy of the Department of the Navy to make available such assistance and facilities as are necessary so that employees may provide for themselves in-plant food service where necessary and practicable. Food service in general includes cafeterias, lunch counters, canteens, and vending machines, which will be operated in conformance with the provisions of this Section. Under certain conditions General Mess and Commissary Stores will be made available to employees as outlined in NCPI 66.4–5 and 4–6.

"4–2. Administration of Food Service.—a. *Organization.*—Food service is operated for the benefit of all employees of an activity through the medium of employee representatives who determine operating policies and procedures, subject to approval of the head of the activity. Normally employee organization and participation may be initiated by the appointment by the head of the activity of a five to seven member Cafeteria Association. However, the commanding officer may determine under certain circumstances that it is in the best interest of the employees and the activity to have

some or all of the members of the Cafeteria Association designated through an elective process, or nominated by employee groups. In this manner employees and employee groups would be given the opportunity to select representatives responsible for the food service and its operation, subject to the provisions of this Section."

3. Navy Civilian Personnel Instruction 66; see Footnote 2.

4. Faleni v. United States, D.C.N.Y.1949, 125 F.Supp. 630, 631, held that a civilian laundry worker employed by the "Ship's Service Department" at a naval air station was not barred from bringing an action under the Tort Claims Act. The Court, in holding that Faleni was not an employee of the United States, emphasized that the plaintiff's salary was not paid from funds appropriated by Congress, that the Ship's Service paid its own obligations for maintenance and upkeep, and carried its own insurance for its equipment.

Daniels v. Chanute Air Force Base Exchange, D.C.Ill.1955, 127 F.Supp. 920, although expressly rejecting Faleni's basis for holding that Faleni was *not* a federal employee, held that an employee of an Air Force Base Exchange *was* a federal employee, but *could* bring an action under the Tort Claims Act, because 5 U.S.C.A. § 150k–1 did not at that time make that the exclusive remedy. We disagree with the Daniels case.

**32**

■ We are not in agreement with the Faleni case.[5] Faleni was decided in 1949. In June of 1952, Congress enacted (66 Stat. 138) 5 U.S.C.A. § 150k,[6] which expressly exempted civilian employees of non-appropriated fund activities from the operation of the Civil Service Commission and the provisions of the Federal Employees Compensation Act, 5 U.S. C.A. § 751 et seq. The legislative history of this Act[7] clearly shows that the Act was passed to allay the doubts raised by the Standard Oil case, supra, as to whether or not the various Civil Service laws and regulations were applicable to civilian employees of non-appropriated fund activities. The Civil Service Commission believed that as a result of the Standard Oil case "it was necessary to consider persons employed in these activities as federal employees and subject to the usual personnel laws."[8]

The Department of Defense did not believe these employees should be included within the federal civil service. The Department of Defense pointed up the administrative difficulties that would result if all such employees (many of whom were employed and released daily) were subject to its laws. Thus, 5 U.S. C.A. § 150k was enacted, providing that civilian employees in Forfari's status "shall not be held and considered as employees of the United States *for the purposes* of any laws administered by the Civil Service Commission or the provisions of the Federal Employees' Compensation Act * * *." [Emphasis added.]

In addition to specifically exempting these employees from civil service regulation and federal employee compensation benefits, § 150k–1 of the Act required the non-appropriated fund activities to provide the employees with workmen's

5. The rationale of Faleni (see footnote 4, supra) appears to us to be wholly inconsistent with the following excerpts from Standard Oil Co. of California v. Johnson, 1942, 316 U.S. 481, 62 S.Ct. 1168, 1170:

"Congressional recognition that the activities of post exchanges are governmental has been frequent. Since 1903, Congress has repeatedly made substantial appropriations to be expended under the direction of the Secretary of War for construction, equipment, and maintenance of suitable buildings for post exchanges. In 1933 and 1934, Congress ordered certain moneys derived from disbanded exchanges to be handed over to the Federal Treasury.

\* \* \* \* \*

"The government assumes none of the financial obligations of the exchange. But government officers, under government regulations, handle and are responsible for all funds of the exchange which are obtained from the companies or detachments composing its membership. Profits, if any, do not go to individuals. They are used to improve the soldiers' mess, to provide various types of recreation, and in general to add to the pleasure and comfort of the troops."

6. "§ 150k. Civilian employees not subject to laws administered by Civil Service Commission

"Civilian employees, compensated from nonappropriated funds, of the Army and Air Force Exchange Service, Army and Air Force Motion Picture Service, Navy Ship's Stores Ashore, Navy exchanges, Marine Corps exchanges, Coast Guard exchanges, and other instrumentalities of the United States under the jurisdiction of the Armed Forces conducted for the comfort, pleasure, contentment, and mental and physical improvement of personnel of the Armed Forces, shall not be held and considered as employees of the United States for the purpose of any laws administered by the Civil Service Commission or the provisions of the Federal Employees' Compensation Act, as amended: *Provided*, That the status of these nonappropriated fund activities as Federal instrumentalities shall not be affected. June 19, 1952, c. 444, § 1, 66 Stat. 138."

7. Senate Report No. 1341, 82d. Cong., Second Sess. (1952); House Report No. 1995, 82d. Cong., Second Sess. (1952); 2 U.S.Code Congressional & Administrative News 1952, p. 1520.

8. Letter dated July 23, 1951, from Robert Ramspeck, the chairman of the Civil Service Commission, to Hon. Tom Murray, Chairman of the Committee on Post Office Civil Service, H.R. (2 U.S.Code Congressional & Administrative News 1952, p. 1523).

compensation and employer's liability insurance.[9] House Report No. 1995 stated that the Act thus assured the employees that "their present benefits provided through private insurance for workmen's compensation and employers' liability will be continued."

Thus 5 U.S.C.A. §§ 150k and 150k–1 serve these two purposes: (1) to render inapplicable civil service control over such employees (because of the administrative difficulties), and (2) to place the financial burden of compensation insurance for such employees on the non-appropriated fund activities rather than on the federal government. Section 150k, however, expressly provided that the status of these non-appropriated fund activities as federal instrumentalities should not be affected.

Forfari's accident occurred on November 21, 1951, some seven months prior to the passage of §§ 150k and k–1. However, as indicated in the legislative history, it was the practice of the exchanges, food services, and the like, to provide the workmen's compensation that the June, 1952, act later made mandatory. The Mare Island Cafeteria System did provide Forfari with such benefits. It is conceded that the California State Fund Insurance Company has awarded Forfari $4,085.76 for the injuries sustained by reason of his fall.

We believe that it is reasonable to say that, if in 1951 the Mare Island Cafeteria System had not provided its employees with workmen's compensation for injuries incurred by them in the scope of their employment, such injuries would have been compensable under the Federal Employees' Compensation Act, and that it took the passage of § 150k in 1952 to remove employees such as Forfari from the protection afforded by the Federal Employees' Compensation Act.

It was not until 150k–1 was amended in 1958 that the protection afforded by that statute was expressly made the exclusive remedy of those within its scope. Yet, when the entire statutory system of remedies provided by the federal government for its employees is viewed in perspective, it is clear that such injuries are, and always have been, beyond the purview of the Tort Claims Act. " * * * the test established by the Tort Claims Act for determining the United States' liability is whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." Rayonier, Inc. v. United States, 1957, 352 U. S. 315, 77 S.Ct. 374, 376, 1 L.Ed.2d 354.

Under the California law, of course, this on-the-job injury would be compensable under workmen's compensation and unless the employer failed to carry such insurance, the injured employee could not bring an action in tort against his employer. West's Ann.California Labor Code, § 3601. Duprey v. Shane, 1952, 39 Cal.2d 781, 249 P.2d 8.

The states have enacted their workmen's compensation schemes and made the remedies provided therein exclusive for industrial accidents. The federal statutory scheme, though providing various remedies for its various classifications of employees, is of the same import. Thus, Feres v. United States, 1950, 340 U.S. 135, 71 S.Ct. 153, 158, 95 L.Ed. 152, in holding that the government was not liable under the Tort Claims Act for injuries to military personnel sustained while on active duty, said:

9. 5 U.S.C.A. § 150k–1 was amended on July 18, 1958 (Public Law 85–538, § 1, 72 Stat. 397). As amended, 150k–1 now makes the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., applicable to civilian employees of any nonappropriated fund instrumentality described in § 150k. The amendment further provides that "such liability shall be exclusive and in the place of all other liability of the United States * * *."

Thus, if Forfari's injuries had been sustained at the date of this writing, there would be no question but that he would have a right to compensation under the Longshoremen's and Harbor Workers' Compensation Act and would not have a right to sue under the Tort Claims Act.

"This Court, in deciding claims for wrongs incident to service under the Tort Claims Act, cannot escape attributing some bearing upon it to enactments by Congress which provide systems of simple, certain, and uniform compensation for injuries or death of those in the armed services."

In Johansen v. United States, 1952, 343 U.S. 427,[10] 72 S.Ct. 849, 853, 96 L. Ed. 1051, the Court held a civilian employee of the United States on a "public vessel" was precluded from seeking recovery under the Public Vessels Act, 46 U.S.C.A. § 781 et seq. The Federal Employees Compensation Act was his exclusive remedy. The Court said that it must "attempt to fit the Public Vessels Act, as intelligently and fairly as possible, 'into the entire statutory system of remedies against the Government to make a workable, consistent and equitable whole.'[11]"

A recent case, decided by the District of Columbia Circuit, is particularly worthy of note: Aubrey v. United States, 1958, 103 U.S.App.D.C. 65, 254 F.2d 768, 772. In Aubrey, despite a pretrial stipulation that the plaintiff, a civilian employee of an officers' mess, was not a federal employee, the Court held that he was precluded from maintaining a Tort Claims action. The Court of Appeals said:

"We conclude that Aubrey is precluded from maintaining this suit under the Tort Claims Act by the principle set forth in Feres and Johansen that the Act was not intended to grant the right to sue the Government to one who has been provided another remedy against its own instrumentality by the Government through a system 'of simple, certain, and uniform compensation for injuries or death.' The compensation system provided for plaintiff Aubrey must, like the Tort Claims Act, 'be construed to fit, so far as will comport with its words, into the entire statutory system of remedies against the Government to make a workable, consistent and equitable whole'."

While Aubrey's injuries were sustained after the passage of the 1952 Act (5 U.S.C.A. §§ 150k, k–1) and Forfari's injuries were sustained shortly before that Act, we do not believe that that fact is decisive of this appeal. The 1952 Act (150k, k–1) on the one hand denied such employees a remedy under F.E.C.A. and on the other hand required the civilian instrumentalities to provide workmen's compensation. The Act neither altered the status of Forfari's employment, nor affected the nature of his accident. This was a "scope of employment" type injury—compensable under workmen's compensation in virtually every state in the Union, and under F.E.C.A. for federal employees. The fact that at the time of this injury the financial obligations as between the federal government and the civilian instrumentality of the government had not been clearly delineated, does not transform this compensable industrial accident into an action under the Tort Claims Act.

---

10. Recently, in Patterson v. United States, 79 S.Ct. 936, 937, the Supreme Court was asked to reconsider the Johansen case. The Court reaffirmed Johansen, and stated: "The United States 'has established by the Compensation Act a method of redress for employees. There is no reason to have two systems of redress.'"

11. It is worthy of note that the Federal Employees Compensation Act was not expressly made the exclusive remedy for federal employees until 1949. In answer to a contention that this indicated that prior to 1949 it was not the exclusive remedy, the Supreme Court said:

"The background of the amendment shows, however, that this impression is erroneous. * * * The purpose of the 1949 amendment is simply 'to make it clear that the right to compensation benefits under the act is exclusive and in place of any and all other legal liability of the United States or its instrumentalities. * * *' Senate Report 836, 81st Cong., First Sess., p. 23."

We hold that Forfari was at the time of his injury a federal employee and that he is precluded from bringing an action under the Tort Claims Act.

The judgment of the District Court is reversed.