290 F.2d 229
 STATE OF TEXAS ex rel. J. M. FALKNER, Banking Commissioner
of Texas, Appellant,
v.
NATIONAL BANK OF COMMERCE OF SAN ANTONIO, TEXAS, and
Broadway National Bank of Alamo Heights, Texas, Appellees.
 No. 18747.
 United States Court of Appeals Fifth Circuit.
 May 15, 1961, Rehearing Denied June 15, 1961.
 
 C. K. Richards, Asst. Atty. Gen., Austin, Tex., Will Wilson, Atty. Gen. of Texas, for appellant.
 Robert J. Hearon, Jr., Ireland Graves, Austin, Tex., John J. Cox, San Antonio, Tex., G. W. Parker, Jr., Fort Worth, Tex., for appellees.
 William H. Orrick, Jr., Asst. Atty. Gen., Russell B. Wine, U.S. Atty., San Antonio, Tex., John G. Laughlin, W. Harold Bigham, Attorneys, Department of Justice, Washington, D.C., amicus curiae.
 Before TUTTLE, Chief Judge, and HUTCHESON and BROWN, Circuit Judges.
 TUTTLE, Chief Judge.
 
 
 1
 Appellant brought actions in the nature of quo warranto proceedings against the appellees, the National Bank of Commerce of San Antonio and the Broadway National Bank of Alamo Heights, in the District Court of Travis County, Texas, by which actions it sought to determine whether the appellees were exercising powers not conferred upon them by their charters and allegedly prohibited by the Constitution and laws of the State of Texas. The appellees filed petitions for removal to the United States District Court for the Western District of Texas, claiming their right to do so under 28 U.S.C.A. 1441(b) and 1442(a)(1),[1] and that court assumed jurisdiction, overruling appellant's motions to remand the suits to the state court. The two suits were consolidated for trial.
 
 
 2
 Before proceeding to a recital of the facts which gave rise to the issues presented on this appeal, it will be convenient to dispose of the question as to the jurisdiction of the District Court to hear this case. We think that the petitions for removal showed at the least a colorable claim that the appellees were acting under an officer of the United States and that the appellees were acting under color of law, as agents of the United States within the meaning of 1442(a)(1) supra. Accordingly, the District Court had jurisdiction to entertain this suit, and acted properly in overruling the motions to remand. See DeBusk v. Harvin, 5 Cir., 212 F.2d 143.
 
 
 3
 For almost two decades, limited banking facilities have been operated at various military installations by national banking associations and by state banks; those facilities have been under the direction of the Secretary of the Treasury and are operated as agents of the federal government. They are designated as depositories and financial agents of the United States under 12 U.S.C.A. 90, if national banks, and under 12 U.S.C.A. 265, if banks insured by the Federal Deposit Insurance Corporation. Each bank so designated is authorized to perform only those functions enumerated in the letter granting it authority to act. As found by the District Court, 'The necessity for the facility and the range of services performed is reviewed periodically by the Treasury, and the facility is terminated, or services curtailed or expanded, as the judgment of the Treasury dictates.'
 
 
 4
 Each bank herein involved was designated a depository and financial agent of the United States on February 2, 1943, the National Bank of Commerce operating facilities at what is now Lackland Air Force Base and the Broadway National Bank at what is now Randolph Air Force Base. The National Bank of Commerce facility was closed by the Secretary on June 30, 1946, and was reopened, pursuant to the same authority, 90, supra, on February 1, 1949; it has been continuously operated since that date. The Broadway National Bank facility was closed on April 30, 1946, but it was reopened, under the same section, on March 2, 1949, and has since remained open. Each facility is physically located within an area in which exclusive jurisdiction has been ceded by the State of Texas to the United States, and in each case the facility occupies quarters furnished by the military post, from which it also receives utilities, guards, and janitorial services. Each facility furnishes to the Treasury Department and to the base commander a detailed monthly report showing those income and expense items which properly may be attributed to the facility. The District Court found with respect to similar facilities in general that 'Usually the facilities are operated at a loss, and this loss is offset by a deposit of Treasury funds, the earning value of which is equal to the operating loss.'
 
 
 5
 As found by the District Court, the functions which the facilities in question perform are limited to:
 
 
 6
 (1) Paying and receiving banking facilities for officers, airmen and civilian employees, including dependents of the Department of the Air Force acting in their individual capacity, and individuals and concerns employed by or attached to USAF installations.
 
 
 7
 (2) Paying and receiving banking service for custodians of non-appropriated funds acting in such capacity.
 
 
 8
 (3) Furnishing cash to finance officers of the Department of the Air Force (including payroll requirements when determined desirable).
 
 
 9
 (4) Accepting deposits from finance officers of the Department of the Air Force for credit to the account of the Treasurer of the United States.
 
 
 10
 (5) Selling savings bonds and stamps for cash.
 
 
 11
 (6) Paying of personal utility bills.
 
 
 12
 (7) Selling banking paper, such as cashier's checks, bank money orders, and travelers' checks.
 
 
 13
 (8) Redemption of savings bonds.
 
 
 14
 In what appears to be a case of first impression, the appellant contended in the District Court and contends here that the banking facilities now in question are operated in contravention of the Constitution of Texas, which does not allow branch banks.[2] In pursuance of this constitutional prohibition, the Texas Legislature has provided that:
 
 
 15
 'No state, national or private bank shall engage in business in more than one place, maintain any branch office, or cash checks or receive deposits except in its own banking house.' V.A.T.S. Art. 342-903.
 
 
 16
 On this appeal, therefore, the appellant argues that the prohibitions apply to the banking facilities here in question because of their connection with state banking institutions domiciled in and incorporated under the laws of Texas, regardless of the appellees' relationship to the Federal government. The appellees, and the Federal government by way of amicus curiae brief, claim that they are exempt, by virtue of their federal connection, from the operation of the Texas constitution and statute. They base their authority to act on 90 which provides:
 
 
 17
 'All national banking associations, designated for that purpose by the Secretary of the Treasury, shall be depositaries of public money, under such regulations as may be prescribed by the Secretary; * * * and they shall perform all such reasonable duties, as depositaries of public money and financial agents of the Government, as may be required of them. * * *'In effect, the question for our consideration is largely one of the applicability vel non of 12 U.S.C.A. 36(c), which provides:
 
 
 18
 'A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question; and (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition and subject to the restrictions as to location imposed by the law of the State on State banks. * * *'
 
 
 19
 The State of Texas thus bases its position on the pari materia argument that the provisions of 90 go only so far as is permitted by 36, i.e., that banking facilities authorized by 90 may, under 36, be opened only where state law permits them. The appellees and the government, on the other hand, urge that 90 is not in any way limited to 36.
 
 
 20
 Upon careful consideration of the statutory provisions thus placed before us, we are led to the conclusion that Section 90 must stand alone. We find nothing in either Section 36 or Section 90 to indicate that Congress intended any different result. It does in fact appear that the legislative history is such that it requires the construction of Section 90 as an independent statute.
 
 
 21
 Admittedly, the power of the Secretary to act as he has done in the instant case was initially based upon his construction of Section 90. Since 1942, the Secretary has construed that statute as enabling him to designate national banks, and in the case of Section 265, banks insured by the Federal Deposit Insurance Corporation, to serve as depositories and financial agents of the government on military installations It is clear from the government's brief in this case that Congress has long been apprised of this construction, and the fact that Congress has failed to enact legislation specifically repudiating the practice or placing the practice in a definite legislative scheme is sufficient indication that Congress has given its tacit approval to such facilities. We mention this legislative history principally because it is treated so extensively by the parties rather than as a basis for our decision.
 
 
 22
 Conceding, as we must, that Congress has the power to determine the conditions under which national banking associations shall operate, the power of Congress to enact such legislation cannot seriously be questioned. The section before us gives the Secretary of the Treasury the power to employ as government financial agents any national banking association, and, having designated a banking association so to act, the Secretary may demand that it perform all such 'reasonable duties' as may be required of it. Clearly this is what the Secretary has done in the present case. The requirement that these national banks open and maintain banking facilities on these military installations is a reasonable imposition of one of the duties which may be required of them under Section 90. Nor does it appear that the Secretary, operating in behalf of the government, has exceeded the authority granted to him by Section 90 and approved, as construed by him, by the Congress.
 
 
 23
 We think that the view we take of this case squares with those decisions, covering almost a score of years, which uphold the power of the government to establish similar facilities on military bases, as a result of which it is well settled that the government may operate, or have operated, on these military establishments facilities which may have little or no direct relation to the base as a military installation and whose existence may be justified in large part solely on the basis of necessity or even of convenience. Thus in Standard Oil Company of California v. Johnson, 316 U.S. 481, at page 485, 62 S.Ct. 1168, at page 1170, 86 L.Ed. 1611, the Supreme Court observed that 'post exchanges * * * are arms of the government deemed by it essential for the performance of governmental functions. They are integral parts of the War Department, share in fulfilling the duties entrusted to it, and partake of whatever immunities it may have under the Constitution and federal statutes.' Other facilities, generally for food service, have been held to be such integral parts of the governmental scheme as to become arms of the government, see, e.g. Nimro v. Davis, 92 U.S.App.D.C. 293, 204 F.2d 734, certiorari denied 346 U.S. 901, 74 S.Ct. 229, 98 L.Ed. 401, Aubrey v. United States, 103 U.S.App.D.C. 65, 254 F.2d 768, 770, United States v. Forfari, 9 Cir., 268 F.2d 29, 31.
 
 
 24
 While they quite obviously perform totally different functions there does not seem to us to be a sufficient difference between the banking facilities and post exchanges for us to say that the government under its power to provide for the national defense may operate or cause to be operated one and not the other. Suffice it to say that the airfields are so located, necessarily away from places in which usual banking facilities would otherwise be available, that the Secretary could reasonably come to the conclusion that such facilities were necessary and reasonable adjuncts of the military installations. Having come to this conclusion and having exercised the power which had been delegated to him, it must follow that he had the right to authorize these national banking associations to act as government agencies and to require of them that they perform all those duties which might be reasonably imposed upon them.
 
 
 25
 We do not now hold that Article XVI, Section 16, of the Constitution of Texas or the statutes enacted in pursuance thereof are invalid. We merely hold that the law of Texas must in these circumstances give way slightly and only in the case of these banking facilities and others similar to them, for, once it is established that the government has the right so to contract with these corporate entities, then the state may not place limitations upon persons-- corporate or real-- so as to impair the free exercise of the power to contract. We do not think that by so holding we do any real violence to the law of Texas or to those objectives which it seeks to achieve by the statutory scheme before us.
 
 
 26
 We think also that our decision in this matter is consistent with that of the District Court for the Northern District of Texas in United States v. Papworth, 156 F.Supp. 842, affirmed on other grounds, 5 Cir., 256 F.2d 125, certiorari denied 358 U.S. 854, 79 S.Ct. 85, 3 L.Ed.2d 235, rehearing denied 358 U.S. 914, 79 S.Ct. 239, 3 L.Ed.2d 235, in which the defendant was indicted for robbing a similar banking facility located at the Carswell Air Force Base. He claimed that the indictment did not allege any offense under 18 U.S.C. 2113(a) because the facility was a branch bank prohibited by the Texas Constitution and Article 342-903, supra, and that since it had no valid existence as a branch bank he could not be charged with the federal offense of taking funds by force from a bank or banking institution. The trial court held the facility not to be a branch bank but an arm or agency of the federal government, and as such, a military banking facility which was a bank or banking institution within the meaning of 18 U.S.C. 371, and the motion was denied. That court commented that 'Even if it were to be conceded, which it is not, that the operation of these facilities constitute a technical violation of state law, the enforcement of such law would handicap efforts to carry out the plans of the United States, and the state enactment must give way.' 156 F.Supp. 845.
 
 
 27
 The judgment of the District Court is affirmed.
 
 
 28
 HUTCHESON, Circuit Judge (dissenting).
 
 
 29
 While I concur in the opinion that the court below correctly held that it had jurisdiction to hear and determine the case, I think the judgment against the State was wrong and I dissent from the opinion of the majority affirming it.
 
 
 30
 It seems clear to me that the district judge was wrong in his view that the state was not entitled to prevent what was going on here, action, in my opinion, which was clearly in violation of the state constitution and statutes.
 
 
 31
 With deference, the opinion of the majority, that the Secretary has the right, as he did here, to override state statutory constitutional provisions and the long standing recognition thereof by congress in its practices and its acts, completely emasculates 12 U.S.C.A. 36(c), which fully recognizes the validity and enforceability of state statutes of the kind in question here. It also disregards and nullifies the long history of the controversy over the establishment of branch banks and the attitude of congress toward that controversy, and, by what seems to be an operation bootstrap, seems to hold that the Secretary, by the invocation and use of 12 U.S.C.A. 90, which clearly authorizes the Secretary of the Treasury to designate national banking associations as depositories of public money and authorizes him no further, can evade and avoid the branch bank limitations imposed upon banks by the Texas constitution and statutes. In assuming, as it does, that the authority given the Secretary under Section 90, to establish depositories, impliedly nullifies and repeals Section 36(c), 12 U.S.C.A., the opinion refuses to face up to the realities of the case which the counsel for the State of Texas met when he correctly answered the question How the Secretary could exercise the authority granted in Section 90, without doing what he did here, saying: 'He doesn't have to designate a branch bank, indeed, he has no authority to do so.'
 
 
 32
 I have no real understanding of, or sympathy with the state prohibition against branch banks. I do know, though, that the State of Texas is a sovereign state and that its laws bind federal officers and agents just as they do everybody else, unless they conflict with some overriding federal constitutional principle or law. Here no one points to either a principle or a statute which overrides these Texas banking laws, and the law of Texas in the matter in question is sovereign and must be obeyed, no matter who in the federal government seeks to evade or defy it.
 
 
 33
 The judgment of the district judge was, in my opinion, not in accordance with our constitutional system. The opinion of the majority, in my opinion, is not in such accord. I, therefore, dissent from it.
 
 
 
 [1]
 'Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought.' 28 U.S.C.A. 1441(b)
 'A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them of the district court of the United States for the district and division embracing the place wherein it is pending:
 '(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title, or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.' 28 U.S.C.A. 1442(a).
 
 
 [2]
 The applicable provisions of the Constitution of Texas are as follows:
 'The Legislature shall by general laws, authorize the incorporation of corporate bodies with banking and discounting privileges, and shall provide for a system of state supervision, regulation and control of such bodies which will adequately protect and secure the depositors and creditors thereof.
 'No such corporate body shall be chartered until all of the authorized capital stock has been subscribed and paid for in full in cash. Such body corporate shall not be authorized to engage in business at more than one place which shall be designated in its charter.
 'No foreign corporation, other than the national banks of the United States, shall be permitted to exercise banking or discounting privileges in this State.' Article XVI, Section 16, Constitution of Texas, Vernon's Ann.St.