**AUTOMATIC RETAILERS OF AMERICA, INC., Plaintiff,**

v.

**Joe RUPPERT et al., Defendants, Automatique, Inc., Intervenor.**

**Civ. No. 7-2010-C-2.**

United States District Court
S. D. Iowa,
Central Division.

June 16, 1967.

B. A. Webster and Robert A. Gamble, Des Moines, Iowa, for plaintiff.

James P. Rielly, U. S. Atty., Des Moines, Iowa, for defendants.

Ross H. Sidney, Des Moines, Iowa, for intervenor.

MEMORANDUM AND ORDER.

HANSON, District Judge.

These rulings are predicated upon defendants' Motion by the United States to Dismiss and a Motion for Summary Judgment.

The instant action was commenced by Automatic Retailers of America, Inc., against certain named employees of the United States Post Office in Des Moines, Iowa. All defendants are alleged to be or to have been members of the Des Moines Post Office Employees Associa-

tion. Five affidavits presented by defendants in support of their motions term the group the Employees Welfare Committee. It is averred that on or about February 10, 1966, the Association entered into a contract for the installation of vending machines in the Des Moines Post Office and that in July said vending machines were installed. It is further alleged that on February 27, 1967, Joe Ruppert, as Secretary-Treasurer of the Association, notified plaintiff that the contract would be terminated at the end of 90 days from the date of receipt of the notice. Plaintiff prayed for, and received, a Temporary Restraining Order on June 1, 1967. The Temporary Restraining Order was later extended to June 22, 1967.

Plaintiff prays that the Court enter a Declaratory Judgment pursuant to Title 28 U.S.C., Section 2201, that the contract is valid and enforceable for five years in accordance with its terms. Plaintiff further prays for proper equitable relief.

The defendants, in support of their motion to dismiss, urge that the action is not in reality against the named defendants in their individual capacity, but is against the Employee Welfare Committee. They argue that such a body is an instrumentality and agency of the United States, and, as such, is imbued with the protective shield of governmental immunity. Defendants ground their Motion for Summary Judgment on the contention that no genuine issue of law or fact has been presented by plaintiff. Plaintiff has filed resistance to the motions.

Two decisive issues are presented for the Court's determination: (1) Is the Employee Welfare Committee an instrumentality of the United States; (2) Is the present action to be considered as one against an agency of the United States or as one against members or former members of an agency in their individual capacity.

In order to arrive at the proper solution to the first issue, the Court must scrutinize the nature and origin of the

Employee Welfare Committee. Congressional approval of the power of the Postmaster General to prescribe necessary rules and regulations, instruct Department employees as to their duties, and to superintend generally the business of the Department may be found in Title 39 U.S.C., Section 501. His authority to delegate functions is granted in Title 39 U.S.C., Section 309. Pursuant to these statutory grants, rules and regulations were published concerning Employee Welfare Committees.

Title 39 C.F.R., Section 98.1 authorizes the installation and operation of vending stands by blind persons certified by State licensing agencies on property operated, maintained, and protected by the Department. Applications are submitted by the State licensing agencies to the postal official in charge of the building involved for his approval or disapproval. If he recommends approval, then approval must be gained from the director, engineering and facilities division, for the region in which the building is located. Plans concerning the design, arrangement, and installation of the stand must be submitted by the State licensing agency to the official in charge for approval prior to installation. Part 743 of the Postal Manual, Section 743.511 provides:

"Employees' committees shall be appointed by the postal official in charge as outlined in Section 743.512, to represent all employee groups of an installation. The postal official in charge shall act as chairman of the committee. The Employee Welfare Committee shall meet on official time."

Section 743.512 refers the reader to Article XXI, Employee Services, Appendix A, Chapter 7. Article I, Coverage, Appendix A, Chapter 7 relates that the Appendix is an agreement between the Department and various employee's organizations. Article XXI provides that each craft or occupational group is to have one representative on the Employee Welfare Committee. Article XXI relates, *inter alia*, that the Employee Welfare Committee is responsible for contracting for the operation of vending machines, restricting items sold in the vending machines to those prescribed in Department regulations, and "expending Committee funds advantageously for the welfare, benefits, and recreational activities of all employees. No profits shall accrue to the benefit of any single group, organization, or individual."

Section 743.513 directs that vending machines may be installed and operated by Employee Committees only upon the approval of the official in charge. They are to be installed only in "workrooms, swingrooms, or other strictly postal space" and where they will not cause congestion. Section 743.521 provides that when Employee Committees contract with outside firms for installation and operation, the contract must specify certain things. Section 743.542 specifies that:

"All income received by employees' committees from vending machines or other enterprises (except cafeterias, which are governed by other regulations) shall be used advantageously for the welfare and recreational activities of all employees. No profits shall accrue to the benefit of any single group, organization, or individual."

See also Title 39, C.F.R., Section 98.1(f). Section 743.543 sets out an extensive list of examples of appropriate expenditures of profits. Section 743.544 designates certain improper expenditures.

The case of Standard Oil Co. of California v. Johnson, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942) is on all fours with the case at hand and, therefore, guides the Court's decision. In that case, a California statute St. 1923, p. 574, § 10, imposed a tax upon the distribution of motor vehicle fuel. However, fuel "sold to the government of the United States or any department thereof" for official use was excepted from the operation of the law. The tax was imposed on gasoline sold by Standard Oil Company to United States Army Post Exchanges in California. The Supreme Court of California utilized federal law in deciding that the Exchanges

were not "the government of the United States or any department thereof."

The Supreme Court held that the post exchanges were "arms of the government deemed by it essential for the performance of governmental functions." They were considered to be "integral parts" of the War Department. The vital factor was the relationship between the post exchanges and the Government. Regulations of the Secretary of War pursuant to federal authority and practices under them, together with relevant statutory and constitutional provisions were determinative of the legal status of the post exchanges.

The Supreme Court viewed the following factors as important indicia of governmental status: Regulations of the Secretary of War pursuant to statutory sanction established the post exchanges; the commanding officer of an Army Post had virtually total authority to establish and manage the exchange; the commanding officers of various units made up a supervisory council; none of such officers received any compensation other than their regular salary; the object of the exchanges was to provide a convenient source of low price goods for soldiers; the Government did not assume any financial obligations of the exchanges but was responsible for funds obtained; and, profits derived from the exchanges were used only for the welfare, pleasure and comfort of the troops.

The case of Nimro v. Davis, 92 U.S.App.D.C. 293, 204 F.2d 734, is perhaps even more analogous to the instant case. The plaintiff instituted suit for food services rendered in a naval gun factory against Admiral Davis and other named officers and civilians "as administrators, directors, custodians of the lunch room fund, members of the board of governors of the Naval Gun Factory Lunch Room Committee."

The Court felt it was compelled to follow the Standard Oil case, supra, in that similar features showed a "distinct relationship" between the Board of Governors of the Naval Gun Factory Lunch-room Committee and the Navy Department.

Persuasive factors were found to be that the lunchroom services at naval installations were established and operated under "Navy Civilian Personnel Instructions" issued by the Secretary of the Navy; the underlying purpose was to advance the Government's interest in military and naval operations; the Board was appointed from Gun Factory personnel by its Superintendent under N.C.P.I.; and, the Board had the responsibility of "developing, recommending, and executing" plans for food service.

Similarly, it is apparent that Employee Welfare Committees are "integral parts" of the Post Office Department. The rules and regulations as a whole establish a pervasive scheme of regulation and control over vending stands and vending machines. The Committees were established pursuant to statutory authority by Title 39 C.F.R., Part 98, and Part 743 of the Postal Manual. More particularly, Section 743.511 of the Postal Manual provides that "Employees' Committees shall be appointed by the postal official in charge." The Agreement details the mechanics of appointment. The Agreement delegates general contractual and managerial duties to the Committees. The officials in charge of the buildings act as the chairmen of the Committees and their approval is prerequisite to any installation and operation of vending machines by Committees. The members of the Committees are all representatives of various craft or occupational groups employed by the Department. The primary objective in establishing the Committees was to further the interests of the Department. Profits are in numerous ways channeled to Department employees in order to achieve their welfare and happiness. The rules and regulations do not authorize the members of the Committees to receive any extra compensation for their Committee services. The Employee Committees meet on official time.

■ In addition, the ability of the Committee to contract and its latitude as to control of profits from the vending machines are limited by Sections 573.321 and 573.44, respectively. There are further rules and regulations which lend weight to the stature of the Committees as a part and parcel of the Post Office Department but the Court does not feel it necessary to go further.

■ The question remains as to whether this action is in reality against the United States. Governmental immunity is not to be determined by the names of titular parties and must be adjudged by the essential nature and effects of the proceedings. Reconstruction Finance Corp. v. MacArthur Mining Co., Inc., 184 F.2d 913 (8th Cir.), cert. den. 340 U.S. 943, 71 S.Ct. 505, 95 L.Ed. 681, rehear. den. 341 U.S. 917, 71 S.Ct. 734, 95 L.Ed. 1352 (1951). A suit is generally thought to be against the Government if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration or if the effect of the judgment would be to restrain the Government from acting or compel it to act. A request for declaratory relief upon a contract to which the United States is a party is a request for relief against the United States. Ove Gustavsson Contracting Co. v. Floete, 278 F.2d 912 (2d Cir.); Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). The purported contract attached to plaintiff's complaint shows that the consideration flowing to Automatic Retailers was exclusive vending rights in the United States Post Office in Des Moines, Iowa. If the Court were to declare the contract valid, the effect would probably be to force the Government to allot space to Automatic Retailers over which it has legal control and to restrain it from using such space otherwise.

Plaintiff in its resistance asserts that the action is not against the Government.

It claims the contract was of a private nature and it quotes Paragraph 12 of the Invitation to Bid in support of its argument. This paragraph does not mean that the Committee is not an agency of the United States or that the action has not been brought against the United States. It means that even though the Committee is an agency of the United States, the United States is not bound by its contracts and cannot be sued thereon. See G. L. Christian and Associates v. United States, 312 F.2d 418, 160 Ct.Cl. 1; Crandell v. United States, 77 Ct.Cl. 624; Pulaski Cab Co. v. United States, 157 F.Supp. 955, 141 Ct.Cl. 160; Borden v. United States, 116 F.Supp. 873, 126 Ct.Cl. 902; c. f. Standard Oil Co. of California v. Johnson, supra.

It appears that plaintiff has filed an Application for Leave to Amend its Complaint to plead specific performance. Such an amendment cannot make plaintiff's case more viable. See Larson, supra; United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); Wells v. United States, 280 F.2d 275 (9th Cir.); Blanc v. United States, 244 F.2d 708 (2d Cir.). In fact, it serves to show even more clearly that the instant case is in fact against the United States.

■ Therefore, the Employee Welfare Committee was acting on behalf of the United States and not in their individual capacities. The United States has not consented to suit in the United States District Court for over $10,000.00 or for declaratory or other equitable relief. Title 28 U.S.C., Section 1346; Nimro, supra.

Accordingly, it is hereby ordered that defendants' Motions to Dismiss and for Summary Judgment are hereby granted.

It is further hereby ordered that the Temporary Restraining Order be dissolved.