**Stephen Robert DEMKO**

v.

**UNITED STATES of America,**
**Appellant.**

**No. 15087.**

United States Court of Appeals
Third Circuit.

Argued April 9, 1965.

Decided Sept. 21, 1965.

Richard S. Salzman, Civil Division, Appellate Sect. Department of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Gustave Diamond, U. S. Atty., Morton Hollander, Attorney, Dept. of Justice, Washington, D. C. on the brief), for appellant.

Gerald N. Ziskind, Pittsburgh, Pa., for appellee.

Before GANEY and FREEDMAN, Circuit Judges, and KIRKPATRICK, District Judge.

FREEDMAN, Circuit Judge.

Plaintiff brought this suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., for damages for personal injuries sustained on March 12, 1962 while performing maintenance work which he was ordered to do as an inmate of the Federal Penitentiary at Lewisburg, Pennsylvania. On his release from prison he was awarded compensation of $180 monthly from Federal Prison Industries, Inc., under 18 U.S.C. § 4126. He later brought this action, which the Government moved to dismiss on the ground that the compensation payments were his exclusive remedy. The motion to dismiss was denied.[1] The parties later entered into a stipulation in which the Government admitted its negligence, agreed that $20,000 in addition to the compensation already received and to be paid in the future would adequately compensate the plaintiff for his injuries, and that on the basis of the District Court's decision plaintiff was entitled to a judgment in the amount of $20,000. The stipulation reserved the Government's right to maintain its defense on appeal and provided that the plaintiff's right to compensation would not be affected by the present action. Pursuant to this stipulation judgment was entered in favor of the plaintiff and against the United States in the amount of $20,000. From this judgment the Government has appealed.

The question is whether § 4126 of Title 18 is plaintiff's exclusive remedy and bars the present action under the Federal Tort Claims Act.[2] Section 4126 provides that all moneys under the control of Federal Prison Industries or received from the sale of its products or by-products or for the services of federal prisoners, shall be maintained in a Prison Industries Fund in the Treasury of the United States. The section also provides, in part, that the fund may be employed "in paying, under rules and regulations promulgated by the Attorney General, * * * compensation to inmates or their dependents for injuries suffered in any industry." In 1961 the section was amended by adding a provision for compensation for injuries suffered by inmates "in any work activity in connection with the maintenance or operation of the institution where confined."[3] The purpose of the amendment was to eliminate the discriminatory difference in treatment between prisoners employed in activities of Federal Prison

---

1. The motion was for summary judgment but the court below treated it as a motion to dismiss the complaint because no answer to the complaint had been filed, although the motion was accompanied by affidavits. Cf. Rule 12(b). In view of the subsequent judgment, this procedural detail need not be reviewed.

2. The cases are divided. The Government's view prevailed in Nobles v. Federal Prison Industries, Inc., 213 F.Supp. 731 (N.D. Ga.1963); Granade v. United States, 237 F.Supp. 211 (S.D.N.Y.1965) appeal pending. Plaintiff's view prevailed in Gomez v. United States, 243 F.Supp. 145 (D.C. Colo.1965).

3. Act of September 26, 1961, Pub.L. 87–317, 75 Stat. 681, 18 U.S.C. § 4126.

Industries, who were afforded compensation for injuries, and prisoners working in various other institutional and maintenance operations, who were not entitled to compensation.[4]

In United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), the Supreme Court recently made it clear that claims against the United States for personal injuries sustained by inmates of federal prisons resulting from the negligence of government employees are within the Federal Tort Claims Act. The opinion was written by the Chief Justice for a unanimous Court. Its avowed purpose was to explore fully the intent of Congress in adopting the Federal Tort Claims Act, and it reviewed the effect of compensation benefits on the remedy afforded by the Act. It therefore points the way to our conclusion. The Court, after examining the circumstances surrounding the adoption of the Act, concluded that "it is clear that Congress intended to waive sovereign immunity in cases arising from prisoners' claims." (374 U.S., at 158, 83 S.Ct., at 1855). The Court rejected the Government's argument that an exception should be implied because of the requirements of prison discipline, and because of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L. Ed. 152 (1950), which held that the United States was not liable under the Act for injuries sustained by a member of the armed forces in the course of activity incident to his military service. Finding that the ultimate justification for the Feres decision was the necessity of maintaining military discipline, the Court declared that there was no such necessity in regard to prisoners, as was shown by the experience of those states which permitted suits by prisoners. But the Court also considered the language of Feres dealing with the effect of a compensation plan, saying: " * * * [T]he presence of a compensation system, persuasive in Feres, does not of necessity preclude a suit for negligence. * * * [T]he com-

pensation system in effect for prisoners in 1946 was not comprehensive. It provided compensation only for injuries incurred while engaged in prison industries. Neither Winston nor Muniz [the respondents] would have been covered." (374 U.S., at 160, 83 S.Ct., at 1856). In a footnote the Court pointed out that even the broadened compensation coverage of prisoners provided by the amendment of 1961 failed to reach all prisoners, and added: "And, in any event, the compensation system still fails to provide for non-work injuries, contrary to that applicable to military personnel." (374 U. S., at 160, n. 17, 83 S.Ct., at 1857, n. 17).

The Supreme Court's careful analysis of the intention of Congress in adopting the Federal Tort Claims Act in 1946 makes it clear that claims by prisoners for negligence fall within the Act and that this coverage is not to be cancelled whenever thereafter some alteration is made in the provision of compensation for prisoners. If such compensation is intended to create either an election of remedies or an obliteration of the remedy for tort, it is to be expected that Congress will express such intention in the compensation statute, especially if it does not establish a full and comprehensive plan.

Congress in adopting the amendment of 1961 to § 4126 gave no express indication that the compensation authorized by it was to be exclusive, and its provisions preclude the imputation of any such intention. The compensation scheme for prisoners is very different from the compensation system for servicemen which was described in Feres as being "simple, certain, and uniform" (340 U.S., at 144, 71 S.Ct. 153) at the time the Federal Tort Claims Act was passed in 1946. It is also vastly different from the right to compensation enjoyed by government employees under the Federal Employees' Compensation Act. It is permissive rather than mandatory. The amount of the award rests entirely within the discretion of the Attorney General,[5] but may not under the

---

4. Sen.Rep. No. 1056 (87th Cong. 1st Sess., 1961), reprinted at 2 U.S.Code Cong. and Admin.News, 1961, p. 3028.

5. See Note, Denial of Prisoners' Claims Under the Federal Tort Claims Act, 63 Yale L.J. 418, 423 (1954).

statute exceed the amount payable under the Federal Employees Compensation Act. Compensation is paid only upon the inmate's release from prison and will be denied if full recovery occurs while he is in custody and no significant disability remains after his release.[6] There is no provision for the claimant to have a personal physician present at his physical examination,[7] and there is no opportunity for administrative review.[8] Finally, compensation, even when granted, does not become a vested right, but is to be paid only so long as the claimant conducts himself in a lawful manner and may be immediately suspended upon conviction of any crime, or upon incarceration in a penal institution.[9]

What emerges on examination, therefore, is a severely restrictive system of compensation permeated at all levels by the very prison control and dominion which was at the origin of the inmate's injury. This discretionary and sketchy system of compensation, which would not even have covered the present plaintiff in 1946, may not be deemed the equivalent of compensation under the Federal Employees' Compensation Act of 1916. Nowhere can there be found any indication that Congress intended that it should serve to exclude prisoners from the broad and sweeping policy embodied in the Federal Tort Claims Act.

The Government, however, argues that the Muniz case is not controlling here because the two prisoners involved in that case were not covered by any compensation plan, and that all that was said by the Court therefore was dicta. They urge that applicable here is the principle applied in Johansen v. United States, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952),[10] reaffirmed in Patterson v. United States, 359 U.S. 495, 79 S.Ct. 936, 3 L.Ed.2d 971 (1959). In Johansen the petitioners were injured in the performance of their duties as seamen. They were concededly within the Federal Employees' Compensation Act (5 U.S.C. § 751 et seq.). They sued, however, to recover damages from the United States under the Public Vessels Act of 1925 (46 U.S.C. § 781 et seq.). The Court held that although the language of the Public Vessels Act appeared to permit such a suit, its central purpose as ascertained from its legislative history and the circumstances surrounding its enactment, led to the conclusion that Congress did not intend it to confer the right to sue on claimants who were entitled to the benefits of the Federal Employees' Compensation Act. Among the reasons for the Court's conclusion was the fact that the Federal Employees' Compensation Act covers all government employees, to whom it brought the benefits of the socially desirable rule that society should share with the injured employee the costs of accidents incurred in the course of employment: "All in all we are convinced that the Federal Employees' Compensation Act is the exclusive remedy for civilian seamen on public vessels. As the Government has created a comprehensive system to award payments for injuries, it should not be held to have made exceptions to that system without specific legislation to that effect." (343 U.S., at 441, 72 S.Ct., at 857).[11]

Thus the essence of Johansen is that the Federal Employees' Compensation Act is so comprehensive a system of cov-

6. Federal Prison Industries, Inc., Inmate Accident Compensation Regulations § 11, 28 C.F.R. §§ 301.1, 301.2.

7. Compare Federal Employees' Compensation Act, § 21, 5 U.S.C. § 771.

8. Compare Federal Employees' Compensation Act, § 37, as amended, 5 U.S.C. § 787.

9. Federal Prison Industries, Inc., Inmate Accident Compensation Regulations § 16, 28 C.F.R. § 301.5.

10. Affirming Johansen v. United States, 191 F.2d 162 (2 Cir. 1951), and Mandel v. United States, 191 F.2d 164 (3 Cir. 1951).

11. The 1949 amendment to the Federal Employees' Compensation Act, which was passed after the Johansen case arose, expressly made the Act exclusive of other remedies against the United States.

erage of all government employees that it is presumably intended to be their exclusive remedy.

The difference between the effect of general compensation available to government employees under the Federal Employees' Compensation Act and that of compensation plans dealing with special circumstances, on rights under the Federal Tort Claims Act is illustrated by United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). It was there held that a veteran could maintain an action under the Federal Tort Claims Act for damages for negligent medical treatment in a Veterans Administration hospital aggravating a service-connected injury, even though he had received additional compensation because of the aggravation, since Congress had given no indication that the right of veterans to compensation was an exclusive remedy. Johansen was distinguished as involving a general workmen's compensation plan.[12]

The limited and discretionary compensation scheme provided by § 4126 is not comparable to the system of compensation provided for government employees by the Federal Employees' Compensation Act. Limited as it is in both the scope of its coverage and the relief it extends, it is not such a broad and general system of compensation that it may be deemed impliedly to express a congressional intention to except federal prisoners injured in the course of their work as inmates from the remedial protection afforded by the Federal Tort Claims Act. The Act, as the Supreme Court has said, "provides much-needed relief to those suffering injury from the negligence of government employees. We should not, at the same time that state courts are striving to mitigate the hardships caused by sovereign immunity, narrow the remedies provided by Congress." United States v. Muniz, 374 U.S. 150, 165–166, 83 S.Ct. 1850, 1859, 10 L.Ed.2d 805 (1963).

The judgment therefore will be affirmed.

---

12. Similarly, Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), holding that servicemen who recovered compensation for injuries were

not barred from suing under the Federal Tort Claims Act if the injuries were sustained while on furlough. See also Annotation, 84 A.L.R.2d 1059.