**Louis H. GRANADE, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 32, Docket 29898.**

United States Court of Appeals Second Circuit.

Argued Oct. 4, 1965.

Decided Feb. 9, 1966.

Parnell J. T. Callahan, New York City (Joseph J. Strelkoff, New York City, of counsel), for plaintiff-appellant.

Richard S. Salzman, Atty., Dept. of Justice, John W. Douglas, Asst. Atty. Gen., Robert M. Morgenthau, U. S. Atty., Alan S. Rosenthal, Atty., Dept. of Justice, for defendant-appellee.

Before WATERMAN, HAYS and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge.

The plaintiff-appellant, Louis Granade, commenced this suit in the United States District Court for the Southern District of New York seeking to recover damages under the Federal Tort Claims Act,[1] for personal injuries he allegedly received while confined in the Federal House of Detention in New York City awaiting sentence on a criminal charge to which he had entered a plea of guilty.

Appellant alleges that on September 13, 1962 he was assigned to operate the prison public address system. To perform this task he was obliged to sit at a table located directly underneath a shelf on which rested an emergency light. The light was not securely fastened to the shelf and while he was at work a

---

1. Chapter 753, 60 Stat. 842 (1946) (codified in scattered sections of Title 28 of the United States Code).

door was slammed causing the light to topple forward and strike him on the head and the right hand. He alleges that the various injuries he sustained from this accident were caused solely by the negligence of the defendant United States and its employees.

The present suit was commenced in May 1964, prior to the appellant's release from prison.[2] In the fall of that year the Government moved for summary judgment pursuant to Fed. R. Civ. P. 56 for failure to state a claim upon which relief could be granted. It pointed out that at the time of appellant's alleged injury he was lawfully in federal custody performing assigned work activities in a federal penal institution, and that Congress had made available a remedy in the nature of workmen's compensation for injuries incurred under these circumstances. See 18 U.S.C. § 4126. It argued that appellant's suit should be dismissed because the compensation system for federal prisoners injured in the course of performing duties assigned them in connection with the operation of a federal penal institution was appellant's exclusive remedy.

On January 25, 1965 the district court granted the Government's motion for summary judgment. In support of this result the lower court first observed it was "undisputed that the plaintiff's injury is compensable under 18 U.S.C. § 4126 * * *." Granade v. United States, 237 F.Supp. 211, 212 (S.D.N.Y.

1965). The lower court went on to rule that:

> The entire statutory scheme of remedies against the Government is based on the principle that where there is a remedy available in the form of a compensation system, there is no concurrent right to sue under the Federal Tort Claims Act. *Ibid.*

Granade's appeal from this order presents us with the narrow but important question whether the district court erred in ruling that compensation for plaintiff-appellant's injury under 18 U.S.C. § 4126 is his exclusive remedy against the United States.

### I.

Appellant draws our attention to the fact that 18 U.S.C. § 4126, the statutory authorization for a system of federal prisoner compensation, contains no explicit indication that Congress intended this compensation system to be the exclusive remedy for prisoners injured while performing duties related to the operation of a federal penal institution. Appellant further notes, with equal accuracy, that the Federal Tort Claims Act does not in terms bar suit by prisoners for injuries also compensable under the federal scheme of prisoner compensation.[3] Since both statutes are silent on this crucial point, appellant argues that we should permit him to bring this present suit grounded upon the Federal Tort Claims Act.[4]

2. Appellant was discharged from prison on January 4, 1965. In an administrative proceeding unrelated to the present case, he sought accident compensation for a disability continuing after his discharge. See Inmate Accident Compensation Regulations, 28 C.F.R. § 301.2 (1959). The Accident Compensation Committee, which administers the compensation program, rejected appellant's claim for compensation benefits "based on medical evidence that any disability you now have is not related to any injury [sustained in prison]." There is no formal provision made for an administrative review of a denial of a compensation claim. And the correctness of this administrative determina-

tion is not at issue in this judicial proceeding.

3. United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), held that an inmate of a federal prison, claiming injury as a result of the negligence of prison officials is not barred from suing the United States under the Tort Claims Act simply by reason of his status as a prisoner.

4. Indeed, appellant urges that the decision of the Court in United States v. Muniz, supra note 3, requires us to allow this suit to proceed. See infra point II.

■ In so arguing we believe appellant would have us overlook a principle of construction to which courts invariably advert when they attempt to fit disparate types of statutory remedies against the federal government into a "workable, consistent and equitable whole." Feres v. United States, 340 U. S. 135, 139, 71 S.Ct. 153, 156, 95 L.Ed. 152 (1950). The principle can be put quite simply: When Congress has established a scheme of compensation to provide a remedy for personal injuries suffered in the course of federal employment, the compensation system is presumed to be the exclusive means of redress against the government for all persons eligible for the system's benefits, even if Congress has not stated that the compensation scheme should be exclusive.

■ This resilient principle of construction was clearly articulated in Johansen v. United States, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952), a case involving a civilian injured while employed on a United States Army transport vessel. As a civil service employee Johansen was concededly eligible to receive benefits under the Federal Employees' Compensation Act of 1916.[5] However, at the time of Johansen's injury the Act did not provide that it was the exclusive remedy against the federal government. Johansen elected to sue the Government under the Public Vessels Act of 1925.[6] No provision in the Public Vessels Act explicitly precluded suit by persons entitled to benefits under the Federal Employees' Compensation Act. In this setting the Supreme Court held that in passing the Federal Employees' Compensation Act Congress presumably intended it to be the exclusive remedy for those injured employees who came within its coverage. After exhaustively examining the rather inconclusive legislative history of the two federal acts the Court concluded in Johansen that when the "Goverment has created a comprehensive system to award payments for injuries, it should not be held to have made exceptions to that system without specific legislation to that effect." 343 U.S. at 441, 72 S.Ct. at 857. Seven years later in Patterson v. United States, 359 U.S. 495, 79 S.Ct. 936, 3 L.Ed.2d 971 (1959) the Court declined to reconsider the teaching of Johansen. And it would now seem to be well settled that if a remedy is available under the Federal Employees' Compensation Act for injuries sustained in the course of employment, this remedy is exclusive, and no concurrent remedy exists under the Federal Tort Claims Act, the Jones Act, the Suits in Admiralty Act, or the Public Vessels Act. Jarvis v. United States, 342 F.2d 799 (5 Cir.), cert. denied, 86 S.Ct. 70 (1965); Somma v. United States, 283 F.2d 149 (3 Cir. 1960); Mills v. Panama Canal Co., 272 F.2d 37 (2 Cir. 1959), cert. denied, 362 U.S. 961, 80 S.Ct. 877, 4 L.Ed.2d 876 (1960).

This same principle of construction is also regularly applied in tort liability suits brought against the federal government by persons eligible for benefits under federal compensatory schemes other than the Federal Employees' Compensation Act, even though these other compensation schemes also lack explicit indication that Congress intended them to be exclusive. See United States v. Forfari, 268 F.2d 29 (9 Cir.), cert. denied, 361 U.S. 902, 80 S.Ct. 211, 4 L. Ed.2d 157 (1959); Aubrey v. United States, 103 U.S.App.D.C. 65, 254 F.2d 768 (1958); Lewis v. United States, 89 U.S.App.D.C. 21, 190 F.2d 22, cert. denied, 342 U.S. 869, 72 S.Ct. 110, 96 L. Ed. 653 (1951).

In view of the unanimity with which courts have announced that injured persons entitled to receive benefits under a federal compensation scheme must look exclusively to that scheme for redress, we would be inclined to apply the principle in the present case even if the principle were logically unsupportable. Fortunately, however, the policy underlying the principle is both apparent and

5. 5 U.S.C. §§ 751–794.

6. 46 U.S.C. §§ 781–790.

quite sensible. Courts hold that federal compensation acts, when applicable, are presumably intended to afford an exclusive remedy on the ground that this is one aspect of a *quid pro quo* whereby the federal government assumes a liability irrespective of fault and in return is relieved of the prospect of suffering large damage verdicts. See 2 Larson, *Workmen's Compensation Law* § 65.10 (1961). Of course, we recognize that Congress can legislate otherwise; but in the absence of evidence as to Congressional intent to do so, it seems most sensible to presume that when Congress provides a system of simple, certain, and uniform benefits it intends this system to be the exclusive means of redress for all those who come within its scope.

The foregoing discussion inclines us toward the application of this "exclusive remedy" principle in the present case and thus affirmance of the district court's grant of the Government's motion for summary judgment; appellant, however, advances two separate arguments that the principle is inapplicable here and urges that these contentions compel us to reverse the district court.

## II.

Appellant first urges that in United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963) the Supreme Court made it clear that claims against the United States for personal injuries sustained by inmates of federal prisons resulting from the negligence of government employees are within the Federal Tort Claims Act, even though the injuries are also compensable under Section 4126. To support this view of *Muniz* appellant points to the Court's statement in that case that in suits by prisoners brought under the Federal Tort Claims Act, as the suits there involved had been, "the presence of a compensation system * * * does not of necessity preclude a suit for negligence." 374 U.S. at 160, 83 S.Ct. at 1856. Viewed, however, in context, the quoted language fails to support appellant's position. *Muniz* disposed of appeals in two separate suits commenced by prisoners in the Southern District of New York. In both cases the district court had granted the Government's motion to dismiss on the ground that prisoners by reason of their status as prisoners could not sue under the Federal Tort Claims Act. Our court, sitting *in banc*, reversed, four judges dissenting. 305 F.2d 264; 305 F.2d 287.

Before the *in banc* court the Government argued that the lower court should be affirmed because, *inter alia*, the existence of a prisoner's compensation scheme was indicative of a congressional intent to foreclose suit by prisoners under the Federal Tort Claims Act. Rejecting this argument we noted that the applicable system of prisoner compensation covered "only a very small portion of the injuries that are sustained by federal prisoners * * *." 305 F.2d at 269,[7] and we recognized that neither of the two prisoner-appellants was eligible for compensation under the system. We went on to conclude that a prisoner compensation system of such limited scope could not with reason be said to bar suit under the Federal Tort Claims Act by prisoners who concededly were not included within

7. Prior to 1961 the federal system of prisoner compensation provided benefits only for prisoners working for Federal Prison Industries, Inc. Only twenty per cent of all federal prisoners were so engaged. See United States v. Muniz, 374 U.S. at 160, n. 17, 83 S.Ct. 1850, 10 L.Ed.2d 805. In 1961 the program was expanded in order to eliminate the difference in treatment between prisoners employed in activities of Federal Prison Industries, Inc., who were afforded compensation for their injuries, and prisoners working in various other institutional operations who were not entitled to compensation. Act of September 26, 1961, Pub.L. 87-317, 75 Stat. 681, 18 U.S.C. § 4126. See S.Rep.No. 1056, 87th Cong., 1st Sess., U.S.Code Cong. & Admin.News 1961, p. 3028 (1961). Both prisoners injured in *Muniz* were injured prior to the 1961 expansion of coverage. And both were ineligible for benefits under the pre-1961 system. They would also have been ineligible under the post-1961 system because neither suffered injury while doing work connected with the maintenance of a penal institution.

the system and hence were not eligible for compensation benefits. We believe the Supreme Court's language to which appellant points means only that prisoners like Muniz, who are ineligible for compensation benefits, are not foreclosed from commencing tort suits against the Government when a scheme exists that provides compensation benefits to certain other prisoners. So understood *Muniz* does not support the present appellant's position because appellant was concededly eligible for benefits under 18 U.S.C. § 4126.

There are further grounds supporting our conclusion that *Muniz* did not hold that prisoners eligible for Section 4126 compensation benefits may also sue for damages under the Federal Tort Claims Act. First, the Court in *Muniz* stated that it had granted certiorari to resolve a conflict between the circuits on the issue whether federal prisoners were, solely by reason of their status as prisoners, disqualified from suit under the Federal Tort Claims Act. In none of the conflicting cases referred to by the Court were the prisoners who sought relief under the Federal Tort Claims Act eligible for federal compensation benefits.[8] Second, in *Muniz* the Court made no attempt to deal with the general teaching of cases such as *Johansen* and *Patterson*, supra. This lack of comment was due, we believe, to the fact that the issue whether an individual eligible for federal compensation benefits may also sue under the Federal Tort Claims Act was not before the Court in *Muniz*. In these circumstances we think it highly unlikely that the Court's language in *Muniz* to which appellant points was designed *sub silentio* to overrule the carefully considered position the Court had previously announced in *Johansen* and

had reaffirmed in *Patterson*. Third, as we have noted earlier, the teaching of *Johansen* and *Patterson* has been consistently applied to foreclose suit under the Federal Tort Claims Act by federal employees who are eligible for benefits under federal compensatory schemes. We cannot believe that *Muniz* holds that, when federal employees are not allowed to pursue both remedies, federal prisoners may bring actions under the Federal Tort Claims Act even though they are also eligible for compensation benefits.

We realize that our reading of *Muniz* is at variance with that of the Third Circuit in Demko v. United States, 350 F.2d 698 (3 Cir. 1965), decided only a few months ago.[9] It is our conclusion that the Third Circuit in *Demko* has misinterpreted the opinion of the Court in *Muniz*, and we do not adopt that interpretation.

### III.

■ Appellant also urges that 18 U.S.C. § 4126 should not be presumed to be the exclusive means of redress against the Government for those individuals within its scope because Section 4126 "is not a comprehensive compensation program." The Third Circuit's decision in *Demko* was bottomed in part on that court's conclusion that the compensation program for prisoners was "discretionary and sketchy." 350 F.2d at 701. We believe, to the contrary, that the prisoner compensation program under consideration is sufficiently comprehensive to justify our holding that it is appellant's exclusive means of redress against the Government.

Section 4126 states that all moneys under the control of Federal Prison Industries or received from the sale of its products or by-products or the services

---

8. Neither of the prisoners involved in *Muniz* were eligible for federal compensation benefits. See note 7 supra. This was also true of the federal prisoners involved in the conflicting Seventh and Eighth Circuit cases mentioned by the Court. James v. United States, 280 F.2d 428 (8 Cir.), cert. denied, 364 U.S. 845, 81 S.Ct. 88, 5 L.Ed.2d 69 (1960);

Lack v. United States, 262 F.2d 167 (8 Cir. 1958); Jones v. United States, 249 F.2d 864 (7 Cir. 1957).

9. *Demko* was decided on September 21, 1965, after the decision of the district court in the present case had been filed but before we heard oral argument on the appeal.

of federal prisoners, shall be maintained in a Prison Industries Fund in the United States Treasury. The section goes on to state that Federal Prison Industries is authorized *inter alia* "to employ the fund * * * in paying, under rules and regulations promulgated by the Attorney General * * * compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution where confined." 18 U.S.C. § 4126. True, Section 4126 does not explicitly require that such a compensation system be established, neither does the section specify a certain mode of operation; nevertheless a compensation scheme has been established and embodied in regulations.[10] This system of compensation does not become less than comprehensive simply because the details of the system are spelled out in regulations rather than in the authorizing statute.[11] And an examination of the regulations makes it quite clear that an award of compensation under Section 4126 is not discretionary but is mandatory as to any claim that comes within their terms.

Appellant nevertheless contends that the system of compensation is less than comprehensive because compensation is paid only upon the inmate's release from penal custody and is denied if full recovery has occurred before the date of release. This argument is in part simply incorrect; prisoners injured while performing paid prison jobs continue to receive full pay while disabled (after a short waiting period) even though they are in prison.[12] It is true that prisoners injured while performing jobs for which no pay is received do not receive compensation benefits until they are released from prison and then only if full recovery has not occurred. However, inasmuch as such prisoners have experienced no loss of earnings, and have received food, clothing, shelter, and medical attention during the period of their incarceration, we find nothing untoward in this result.

Appellant also maintains that the compensation program for prisoners is less than comprehensive because it "does not compensate a prisoner for any * * * pain and suffering which he may endure while in prison." This is admittedly so. However, the theory of workmen's compensation legislation is that in return

10. See Inmate Accident Compensation Regulations, 28 C.F.R. § 301.1–.10 (1959). A comprehensive exegesis of these regulations is distributed to federal prisoners in pamphlet form. Federal Prison Industries, Inc., Inmate Accident Compensation Regulations (1962) [hereinafter Inmate Compensation Pamphlet]. This pamphlet is set out in full in the appendix to the Government's brief in the present case. The provisions of 28 C.F.R. § 301.1–.10 (1959) *do not seem to conflict* with the more comprehensive statement of the prisoner compensation system set forth in the Inmate Compensation Pamphlet. Certainly no conflict exists that is relevant to the present case.

11. At least one other federal compensation system has been construed to provide the exclusive remedy *for those within its terms* even though the authorizing statute was not significantly more detailed than is Section 4126. Prior to its amendment in 1958 Section 150k–1 of Title 5 required only that certain military establishments operating on nonappropriated

funds—self-supporting cafeterias and officers' messes—"provide their civilian employees, by insurance or otherwise, with *compensation for death or disability* incurred in the course of employment." Ch. 444, § 2, 66 Stat. 139 (1952) (now § 1, 72 Stat. 397 (1958), 5 U.S.C. § 150k–1). It is true that the pre-1958 statute went on to provide that compensation shall not be less than that provided in the state where the workers are employed; nevertheless, with this exception, old Section 150k–1 was no more detailed than is Section 4126. Yet the cases uniformly hold that old Section 150k–1 provided an exclusive remedy. See Rizzuto v. United States, 298 F.2d 748 (10 Cir. 1961); Lowe v. United States, 292 F.2d 501 (5 Cir. 1961), affirming, 185 F.Supp. 189 (D.Miss.1960); United States v. Forfari, 268 F.2d 29 (9 Cir.), cert. denied, 361 U.S. 902, 80 S.Ct. 211, 4 L.Ed.2d 157 (1959); Aubrey v. United States, 103 U.S.App.D.C. 65, 254 F.2d 768 (1958).

12. Section 301.1, 28 C.F.R. (1959); § 11 Inmate Compensation Pamphlet.

for a guaranteed recovery only those items of damage that adversely affect earning power are compensable. See Sweeting v. American Knife Co., 226 N.Y. 199, 123 N.E. 82, aff'd sub nom. New York Cent. R.R. Co. v. Bianc, 250 U.S. 596, 40 S.Ct. 44, 63 L.Ed. 1161 (1919); 1 Larson, Workmen's Compensation Law § 2.40 (1961). Therefore, though appellant while in prison may have experienced pain and suffering due to his work-related injury for which he has received no compensation, that has no bearing on whether § 4126 should be considered an exclusive remedy. What is relevant is whether this section and the related regulations afford all the benefits usually provided by workmen's compensation legislation, and in our judgment they do. The regulations adopted pursuant to Section 4126 provide all necessary medical, surgical, and hospital services whether required during incarceration or after discharge.[13] If disability persists beyond release inmates are accorded monthly compensation benefits based on the provisions of the Federal Employees' Compensation Act.[14] The right to such compensation is not dependent upon evidence of fault or negligence on the part of the Government; nor is it defeated by the prisoner's own contributory negligence, although, in common with the Federal Employees' Compensation Act,[15] benefits are not payable for injuries caused by the wilful misconduct of the prisoner.[16]

 We conclude that the district court's grant of appellee's motion for summary judgment should be affirmed on the ground that appellant's injuries were compensable under the system of prisoner compensation established pursuant to 18 U.S.C. § 4126 and therefore he may not maintain this action under the Federal Tort Claims Act.

---

13. Section 301.8, 28 C.F.R. (1959); §§ 2, 17 Inmate Compensation Pamphlet.

14. Section 301.2, 28 C.F.R. (1959); §§ 12, 13 Inmate Compensation Pamphlet.

15. 5 U.S.C. § 751(a).

16. 301.4, 28 C.F.R. (1959); § 10 Inmate Compensation Pamphlet. In Demko v. United States, 350 F.2d 698 (3 Cir. 1965), it was also suggested that the prisoner compensation program was less than comprehensive because the regulations contained no provision for a claimant seeking compensation benefits to have a personal physician present at his physical examination. As we understand the operation of this program, nothing prevents an ex-prisoner from accompanying his claim for benefits with the examination report of his own physician. The Third Circuit also observed that there is no formal provision for administrative review of the Accident Compensation Committee's decision. Although this observation is correct, we do not believe it warrants a holding that 18 U.S.C. § 4126 is not the exclusive remedy for those who come within its terms. The lack of judicial review of final compensation orders has never been thought grounds for holding that a particular compensation system is other than exclusive. See, e. g., Blanc v. United States, 244 F.2d 708 (2 Cir.), cert. denied, 355 U.S. 874, 78 S.Ct. 126, 2 L.Ed.2d 79 (1957).