Fred KUDELKA, Sr., Plaintiff-Appellant,

v.

AMERICAN HOIST & DERRICK COMPANY, a corporation, Defendant and Third-Party Plaintiff-Appellee,

v.

UNITED STATES of America, Third-Party Defendant-Appellee.

Fred KUDELKA, Sr., Plaintiff-Appellee,

v.

AMERICAN HOIST & DERRICK COMPANY, a corporation, Defendant and Third-Party Plaintiff-Appellant,

v.

UNITED STATES of America, Third-Party Defendant-Appellee.

Nos. 75–1541, 75–1542.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1976.

Decided Sept. 3, 1976.

H. Carl Runge, Jr., East St. Louis, Ill., for Kudelka.

Howard Boman, East St. Louis, Ill., for American Hoist & Derrick.

Donald B. Mackay, U. S. Atty., Springfield, Ill., Robert E. Kopp, Barbara L. Herwig, Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., for U. S.

Before PELL and BAUER, Circuit Judges, and PERRY, Senior District Judge.*

PELL, Circuit Judge.

This is an appeal in a personal injury suit by the plaintiff from a judgment entered on a directed verdict in favor of the defendant American Hoist & Derrick Company. American Hoist had filed a third-party complaint against the United States of America, and inasmuch as the judgment was being entered for American Hoist, judgment was also simultaneously entered in favor of the Government. The plaintiff urges on appeal that he had introduced sufficient evidence to present a jury question and that the district court erred in excluding certain evidence which, according to plaintiff, would have compelled a different result.

■ Jurisdiction is based on diversity of citizenship, and it is undisputed that Illinois law governs the case. This circuit looks to state law to determine the standard by which to judge a motion for a directed verdict. *Illinois State Trust Co. v. Terminal Railroad Association,* 440 F.2d 497, 500 (7th Cir. 1971), *cert. denied,* 404 U.S. 855, 92 S.Ct. 100, 30 L.Ed.2d 96. In *Illinois State Trust,* this court indicated the relevant standard was stated by the Illinois Supreme Court in *Pedrick v. Peoria & Eastern Railroad,* 37 Ill.2d 494, 510, 229 N.E.2d 504, 513–14 (1967):

> [V]erdicts ought to be directed . . . only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.

We therefore view the evidence in this light. Some of plaintiff's witnesses were seriously impeached on cross-examination, but issues of credibility should not be resolved on a motion for a directed verdict under this standard.

Plaintiff was part of a two-man team who operated a 20-ton mobile crane manufactured by American Hoist. The crane was designed, owned, and operated by the United States at the Army Depot in Granite City, Illinois. Plaintiff was employed at the Depot. The lifting portion of the crane was mounted on the rear of a truck in such a manner that it could swivel. At the time of the accident, plaintiff was in the truck cab and John Carlson, his co-team member, was in the rear operating the crane itself.

* Senior District Judge J. Sam Perry of the Northern District of Illinois is sitting by designation.

On the day of the accident, plaintiff and Carlson were instructed to load a D-6 Caterpillar tractor on to a flat bed trailer. Carlson testified that according to a plate affixed to that type of tractor, it weighed 24,000 pounds. Plaintiff backed the crane unit into the appropriate position for lifting the tractor with the crane facing the rear. Other persons attached the tractor to the crane, and Carlson started the lift. When the tractor was a few inches off the ground, the boom of the crane shuddered and collapsed. Carlson testified that as the boom started to fall, he swung the crane to the left a bit to keep the boom from falling down on the tractor. Plaintiff testified that just after he felt the lift begin, he was thrown violently from side-to-side and out of the truck cab on to the ground. He sustained serious back injuries.

The crane was equipped with outriggers which, according to Carlson, were used to stabilize the unit; but it is undisputed that they were not being used at the time of the accident. Affixed to the crane was a plate which indicated that at the angle at which the boom of the crane was being operated at the time of the accident, the crane capacity without the outriggers was 17,700 pounds and with the outriggers was 31,000 pounds. Carlson testified that the outriggers have nothing to do with the lifting capacity of the boom.

At the time of the accident the boom contained an insert extending it ten feet. It was the insert which collapsed. Inserts were made by several manufacturers, and one of American Hoist's defenses was that it had not produced the particular insert which failed. An inspector testified that the insert had a plate on it which identified it as from American Hoist. At a deposition he testified that he did not know who manufactured the insert, but he explained this conflict, at least partially, by indicating that he meant that he did not know whether or to whom American Hoist might have subcontracted the production of the insert. Another inspector testified that the extension had not been removed and had been on the crane for some time because the paint on the bolts holding it was not cracked and it had not been painted over.

The complaint against American Hoist was framed in five counts. The basic facts alleged were consistent, but the counts were drafted so as to state causes of action under different theories of the law. Count I was based on negligence, Count II on express warranty, Count III on implied warranty, Count IV on strict liability, and Count V on res ipsa loquitur. Count V was stricken by plaintiff prior to trial.

■ Each of the original counts of the complaint alleged improper design, engineering, and manufacture. According to the defendant, the design and engineering claims were struck from the complaint at a conference prior to trial. Unfortunately, no one caused the record to show what took place at this conference. Plaintiff's counsel, who, unlike American Hoist's counsel, was not trial counsel, argues that we should not consider counsel's representations in this regard because they are foreign to the record. Normally plaintiff's position would have merit, but the record contains substantial support showing that somehow, prior to trial, the propriety of the design and the propriety of the engineering were eliminated as issues.[1] Plaintiff's case, therefore,

---

1. Neither plaintiff's nor American Hoist's counsel mentioned the propriety of the design or engineering of the boom in their opening statements; both mentioned the question of the way the boom was manufactured. The following colloquy took place between the district judge and the plaintiff's counsel:

> Court: There is no problem over design any more, is there?
> Counsel: No, Sir.
> Court: There is no problem over engineering?

> Counsel: No, Sir.

On other occasions the district judge and defendants' counsel made remarks about design and engineering no longer being in issue, and plaintiff's counsel never objected. Plaintiff's counsel, on another occasion remarked:

> He [plaintiff's engineering expert] feels, and our answers to interrogatories so show, that from an engineering and design standpoint we have nothing, so to speak, to complain about, but that from a manufacturing standpoint  .  .  . .

must stand or fall on his evidence regarding the propriety of the manufacture of the crane.

At the close of plaintiff's evidence, American Hoist moved for a directed verdict in its favor, which was granted. Regarding Count II, on express warranty, the court indicated that it had been withdrawn on the morning of trial but that in any event there was no evidence of any express warranty. Plaintiff does not contend in this appeal that this was error. The trial judge discussed each of the remaining counts individually, but his basic reason in each instance was that plaintiff's evidence showed that he was attempting to lift a load greater than the limits the plate indicated should be lifted without using the outriggers. During the trial the trial judge stated:

> This is a case concerning possible negligent manufacture, a case concerning the alleged introduction into commerce of a dangerous instrumentality, a case involving breach of warranty.
>
> As I stated before, no such case can stand as a matter of law if the product was not being used in the way it was intended to be used by the manufacturer.

Earlier during the trial, the following colloquy occurred:

> Plaintiff's counsel: As far as the outriggers are concerned, your Honor, they would in no way affect the lifting capacity of the boom and the boom insert. Their function is to stabilize the unit, itself. They have nothing to do with the lifting capacity of the unit.
>
> The Court: Well, I am not going to permit the jury to pass on that kind of a question because I don't think that is true. Outriggers will give lateral stability and the strength of a boom—you don't have to be an engineer to know that if you've got it cocked a little bit that it is not as strong as if you are operating it straight.

■ The Illinois Supreme Court apparently first recognized strict liability as an independent theory of tort recovery in *Su-vada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182 (1965). In *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.*, 62 Ill.2d 77, 338 N.E.2d 857, 861 (1975), a case in which a manufacturer sought indemnity against the maker of a component part which failed, the court summarized the doctrine as it has evolved. It held that the plaintiff must prove that the product contained a defective condition which existed at the time it left the defendant's control and that the defect rendered the product unreasonably dangerous and proximately caused the injury to the plaintiff. Proof of a plaintiff's negligence will not serve to bar a strict liability claim, but proof of misuse or proof that plaintiff assumed the risk of the defect will bar recovery. The court has held that misuse of a product is using it for a purpose neither intended nor foreseeable. It is at least implicit in the Illinois cases that for misuse to bar recovery, it must have contributed to the accident which occurred.

■ We hold that it was error for the district judge to direct a verdict in favor of the defendant on the basis that the evidence showed that plaintiff was attempting to lift a load greater than the load limits shown on the plate for the crane without outriggers. The only evidence before the court concerning the outriggers was that they had nothing to do with the strength of the boom. The trial judge may have been correct in his conclusion that the boom was weakened if it was "cocked a little bit" and that the outriggers would have prevented this; but there was no evidence presented at trial on which he could have based this conclusion, and the conclusion was not one which could properly be drawn on the basis of judicial notice. Had the crane tipped over and plaintiff been injured, there could be no question that the failure to use outriggers could be considered material, but that is not what happened. Even if the district judge were right concerning the boom, plaintiff could still have argued that

---

In answering interrogatories the plaintiff indicated that he did not contend that any part of the crane or boom was negligently engineered or designed.

American Hoist should have foreseen that operators would think that the outriggers were only to provide stability and that the plate should have warned that failure to use the outriggers could cause the boom to break under loads which were less than the maximum for which the boom was rated. For similar reasons, we believe the district court erred in dismissing plaintiff's negligence count and plaintiff's implied warranty count.

The plaintiff testified that the crane started vibrating, it was fishtailing and was whiplashing from left to right. Such frenzied gyrations are somewhat difficult to understand because the tractor had been lifted at the time only a few inches off the ground. It is for the trier of fact, however, not the judge on a motion for directed verdict to determine the extent to which testimony corresponds to the actual facts. Further, taking the testimony at face value, the agitated movement of the equipment *could* have been from a lack of stability resulting from the lack of outriggers which, in turn, *could* have caused the breakdown. The use of "could" itself indicates that it is a question for the jury to determine whether "could" is to be equated with "did." In any event, the district court did not rest its determination upon this factual analysis but rather essentially upon the basis that the product was not being used "in the way the manufacturer intended that they should use it and advised them that they should use it." This, of course, goes to the warning on the equipment relating to the use of outriggers when certain weights were being lifted. The court at one point in the trial observed that "[i]f the outriggers had been used you wouldn't have the situation you have, and you might not have had the accident. I don't know."

There being factual uncertainty as to whether the failure to use the outriggers was causative, the uncertainty should have been resolved by the jury and the decision not rested upon non-compliance with a warning label which was not shown to have been related to the accident, at least to the point of removing the question from the jury. In reaching this result we do not intend in any way to express sympathy for one who uses a manufactured product in a manner warned against by notice on the product and then complains because of disaster resulting from the very use prohibited or warned against. Here, however, it does not appear that the basis for the warning, danger from lack of stability in using with an excessive weight, had such bearing on the accident as to make nonobservance of it sufficient to close out the opportunity of the jury to determine what was the cause of the accident.

The only evidence that a defect existed in the insert at the time it left American Hoist's control was circumstantial evidence. The plaintiff primarily relied on an inference of a defect from the breaking of the boom, although there was evidence that a crack in the boom found after the failure was an old crack and might have caused the insert to collapse. There was no evidence that any kind of misuse prior to the accident could have weakened the boom so that it would fail when exposed to a heavy load. These are all matters properly to be considered by the jury.

We note the argument strenuously advanced by the plaintiff that the deposition of his expert witness, William Royall, should have been admitted into evidence. The plaintiff appears to argue on appeal that the deposition would have supported his position that the outriggers had nothing to do with the strength of the boom. The deposition, however, provides no apparent support on this issue. Plaintiff also argues that the deposition would show that the boom should have withstood a much greater load than the Caterpillar tractor. American Hoist argues that the plaintiff did not make an adequate offer of proof to preserve his right to appeal the decision of the district court to deny admission of the deposition. With regard to the deposition itself, it is at least arguable that an offer of proof was unnecessary because its content was obvious, but an attorney certainly acts at his peril to assume that its relevance will be obvious. The deposition indicates that the

boom was designed so that the steel in the boom would not be exposed to more than sixty percent of the load which would cause the boom to permanently bend or "yield." The purpose of this "safety factor" is not to guard against damage from accidental overloading but rather is to protect the boom from incurring fatigue failure which could occur if the steel in the boom were exposed to a high percentage of its yield. Thus, it is a fair inference from the deposition that if the boom had been exposed to overloading between the time the boom was manufactured and the time of the accident, this could have caused metal fatigue, weakening the metal, so that it would fail when exposed at another time to a load within the limits. In this manner the deposition would have weakened plaintiff's circumstantial showing that the boom was defective when it left American Hoist. In any event, inasmuch as we have determined that a new trial is required, we will leave to the district court the matter of determining the admissibility of the deposition, if offered.

■ The Government urges that irrespective of the outcome of the plaintiff's appeal from the judgment against him, the judgment in its favor should be affirmed. In the district court the Government twice moved to dismiss the third-party action and also sought summary judgment. The motions were denied. American Hoist argues that the Government has no standing to urge affirmance here because it did not take an appeal from the district court's adverse rulings against it. These rulings, however, were interlocutory and nonappealable. While the court entered a final judgment for the Government simply because of doing so for the first line defendant, that, in our opinion, does not preclude our affirming the judgment in favor of the Government if that should have been the proper disposition in the trial court.

■ At the outset of our consideration, we note that there would be at best a slim basis for liability on the third-party suit if the Government remains a party. A principal basis of the third-party complaint was

that the United States, not American Hoist, designed and engineered the crane and that if American Hoist were held liable on the grounds of improper design or engineering, the United States should be required to indemnify American Hoist. Because the design and engineering claims were struck before trial, the United States cannot be held liable on either of these bases. American Hoist argues that there remains that part of the third-party action based on the Government's use of the crane, its selection of the operator, the instruction given to the operator, and the maintenance of the crane.

■ Inasmuch as the plaintiff's complaint was in part founded upon a negligence theory, we can conceive that it could be found that there was negligence on the part of the manufacturer concurring with negligence on the part of the Government as proximate causes of the injury in question. This would lead into the thorny field of indemnity, contribution, and active-passive negligence. There is authority in Illinois to the effect that a third-party complaint may be properly dismissed upon the pleadings, *Burke v. Sky Climber, Inc.,* 13 Ill.App.3d 498, 301 N.E.2d 41 (1973), *aff'd,* 57 Ill.2d 542, 316 N.E.2d 516 (1974). The district court in the present case deemed it the wiser course to confront this question upon the basis of the proof at the trial which, of course, never was completed. If this were the only issue on the present matter, we might be inclined to agree; but it is not the sole basis of the Government's argument for affirmance.

The further argument is that the plaintiff, a federal employee, having received benefits under the Federal Employees Compensation Act for his injuries, that Act precludes recovery by the third-party by way of indemnity.

The Federal Employees Compensation Act, 5 U.S.C. § 8116(c) provides:

The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an em-

ployee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

The Government points out that it is well settled that § 8116 precludes a Federal employee from suing the United States for injuries sustained during the course of his employment, citing *Granade v. United States,* 356 F.2d 837 (2d Cir. 1967), *cert. denied,* 385 U.S. 1012, 87 S.Ct. 720, 17 L.Ed.2d 549. The Government's argument then continues:

> The FECA, while providing for liability to government employees without fault, was intended to be exclusive and to replace "any and all other legal liability of the United States * * * which can be enforced by original proceedings * *." S.Rep.No.836, 81st Cong., 1st Sess., p. 23. See also H.Rep.No.729, 81st Cong., 1st Sess., pp. 5, 15. It would be inconsistent with this purpose to permit recovery from the government whenever the employee can also sue a non-government joint tortfeasor. Yet that would be the result of permitting a suit against the government for indemnity in this case.

The substance of this argument was made to the district court, which rejected it on the basis that there was no controlling authority in the Seventh Circuit and that

the rule articulated in *Wallenius Bremen G.m.b.H. v. United States,* 409 F.2d 994 (4th Cir. 1969), is the correct statement of the law. The Government concedes that this case is against its position and does not attempt to distinguish it. In the district court, the Government brought to the attention of the court that the Fourth Circuit view was the minority view. Indeed, on this appeal, the Government contends, and we believe correctly, that the Fourth Circuit stands alone on the issue, all other circuits considering the issue having reached a contrary position on the particular issue before us.

■ In renewing its motion to dismiss and supporting its motion for summary judgment in the district court, the Government brought to the attention of the court that two more circuits, the Second and the District of Columbia, had reached the majority result.[2] The district court apparently remained unpersuaded. Subsequent to the entry of the final judgment in the district court, the Second Circuit has addressed the issue in a detailed and scholarly opinion, *Galimi v. Jetco, Inc.,* 514 F.2d 949 (2d Cir. 1975). The holding of that case is that the third-party plaintiff was barred by the exclusive remedy provision of the Federal Employees Compensation Act from seeking contribution or indemnification from the United States as a joint tort-feasor.[3] Because of the thorough analysis of the issue, including those aspects found persuasive by the Fourth Circuit, and because we are in complete agreement with reasoning and result in *Galimi,* we see no purpose for extending this opinion by repeating what the Second Circuit has stated so well. We therefore hold that American Hoist is not

**2.** The Government cited to the court the following authorities on this occasion:

> *Newport Air Park, Inc. v. United States,* 419 F.2d 342 (1st Cir. 1969); *Murray v. United States,* 132 U.S.App.D.C. 91, 405 F.2d 1361 (1968); *Maddux v. Cox,* 382 F.2d 119 (8th Cir. 1967); *Wien Alaska Air Lines, Inc. v. United States,* 375 F.2d 736 (9th Cir. 1967); *United Air Lines, Inc. v. Wiener,* 335 F.2d 379 (9th Cir. 1964), *cert. dismissed sub nom. United Air Lines v. United States,* 379 U.S.

> 951, 85 S.Ct. 452, 13 L.Ed.2d 549; *Travelers Insurance Company v. United States,* 493 F.2d 881 (3rd Cir. 1974); *Sheridan v. DiGiorgio,* 372 F.Supp. 1373 (E.D.N.Y. 1974), *aff'd,* 505 F.2d 727 (2d Cir. 1974).

**3.** It would not seen necessary to state that unless the third-party plaintiff is liable to the original plaintiff there would in any event be no liability on the part of the third-party defendant.

...

entitled to maintain its third-party action against the United States.[4]

For the foregoing reasons, the judgment in favor of the United States is affirmed. The judgment against the plaintiff is reversed, and the case is remanded for a new trial and such further proceedings as are not inconsistent with this opinion. On remand the plaintiff may not raise anew the claims which we have ruled were properly dismissed, *i. e.,* Count II, Count V, and the design and engineering claims in Counts I, III, and IV. Costs shall be borne by American Hoist.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

4. This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing in banc on the question of the conflict between this circuit and the Fourth Circuit.